BOWDEN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 81. Submitted under sec. (Rule) 251.54 February 1, 1973.—Decided February 27, 1973.*

(Also reported in 204 N. W. 2d 464.)

For the plaintiff in error the cause was submitted on the brief of *Gerald P. Boyle* of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Richard J. Boyd,* assistant attorney general.

HANLEY, J.   The sole issue is whether there is sufficient credible evidence to sustain defendant's conviction of second-degree murder.

The standard of review this court applies to the question of the sufficiency of the evidence is set forth in *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.   It is there stated:

"Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them.   The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt.   The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true.   A criminal conviction can stand based in whole or in part upon circumstantial evidence.   The credibility of the witnesses and the weight of the evidence is for the trier of fact.   In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding.   Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted.   Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules."

At about 1:22 p. m. on October 27, 1969, officers of the Milwaukee police department were summoned to the residence of eighty-nine-year-old Anna Pichl at 2223 West Cherry Street in Milwaukee, Wisconsin.   The rear doors of the premises had been forcibly opened and the officers found Miss Pichl lying on her back in a doorway between a bedroom and the center room of the house.   It appeared that she had suffered a severe beating.   Although still alive, she was in an hysterical and

incoherent state of mind. Subsequently, Miss Pichl died as the result of what was described by the Milwaukee county medical examiner's office as a severe beating about the head, trunk, arms and legs.

The state's case was built upon the testimony of Sammy Clark, Bruce Jones and Richard Earl who all testified to having been in the Pichl house at one time or another on the evening of October 24, 1969. Clark, age twenty-one, who was granted immunity to testify, stated that he saw the defendant at about 9:30 p. m. on the 24th at the home of Richard Earl's mother, located at 1426 North 21st Street. He further testified that the defendant asked him if he wanted some money and when Clark responded that he did, the defendant told Clark to follow him. After having been led to the victim's house, the two proceeded to literally break down the back door. Upon entry, the two confronted Miss Pichl in the dining room and when she attempted to scream, Clark testified that the defendant covered her mouth with his hand. Clark testified that he proceeded into the front room, looking for something to steal. A short time later, he heard sounds and upon investigation, found defendant striking the victim in the face with his fists. Clark then testified that he then went into another room and when he returned he found the defendant "on top of the old lady," performing what appeared to be sexual intercourse. Clark testified that he pulled the defendant off and without speaking, left the house carrying a television set and returned to the Earl house. Clark testified that after hiding the television he asked Bruce Jones to come with him and together the two returned to the Pichl residence, only to find the defendant on top of the victim again.

On direct examination, Bruce Jones, age fourteen, testified that upon finding the defendant still having relations with the victim, he and Clark pulled him back

to the door but that the defendant broke away and as the victim started to get up, the defendant started hitting and kicking her in the head and back. Jones testified that he tried to help Miss Pichl up, but before he could, the defendant threw or shoved a cooking fork which "stuck" in her back. Then he and Clark left without the defendant. Clark had earlier testified, on cross-examination, that he did not see the defendant strike Miss Pichl the second time he was in the house nor did he see the defendant with a fork or any other weapon. Clark and Jones then left the house, carrying a stereo and returned to the Earl house. After returning to the Earl house, Jones testified that Clark told him he better go get the defendant, so Jones returned to the scene, this time accompanied by fifteen-year-old Richard Earl.

Although Jones had testified that upon returning once again, he still found the defendant having relations with his victim, Earl testified that they found the defendant standing over the victim and that he and Jones pulled him away. The defendant responded by saying "Wait a minute man" and then proceeded to kick her and hit her with his fists. When defendant was asked by Earl why he had done that, Earl testified that he responded it was because this was the lady that sent him up. Each of the witnesses testified that the only person to harm Miss Pichl was the defendant.

Also called to testify for the state was Arnold Williams, the defendant's roommate at Wyalusing Academy in Prairie du Chien, Wisconsin. Williams testified that at noon on the day of the crime, the defendant told him that "he knew where he could get some money." After traveling to Milwaukee later in the day, the defendant and Williams were walking and at about 9 p. m. stopped on 14th and Walnut Streets. At that time, Williams testified, the defendant wanted him to come

down Walnut Street with him, saying he was going to get some money. Williams said he refused the invitation and the two parted.

Although the defendant properly cites numerous inconsistencies in the testimony of Clark, Jones and Earl, both with each other and with past statements which were made by them before a court and under oath and which were, therefore, substantive evidence [1] of the events which took place in the Pichl home, these inconsistencies, for the most part, do not contradict any of the testimony concerning the major sequence of events or the numerous instances of physical abuse which each of the witnesses testified to as seeing defendant at one time or another mete out.

The question before the jury was one of credibility and in *Austin v. State* (1971), 52 Wis. 2d 716, 718, 190 N. W. 2d 887, this court stated:

"We have set forth in *Lemerond v. State* (1969), 44 Wis. 2d 158, 162, 170 N. W. 2d 700:
" ' "The credibility of the witnesses is properly the function of the jury or the trier of fact, in this case the trial judge. It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial." *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671.' "

The defendant took the stand in his own behalf. He testified on the evening in question he arrived at the Earl home at 9 p. m. at which time he met Sammy Clark. He further testified that Clark suggested going to the Pichl residence because he needed some money. The

---

[1] *Gelhaar v. State* (1969), 41 Wis. 2d 230, 237–242, 163 N. W. 2d 609.

testimony of the witness Williams established that the defendant was the one in need of money and had plans to obtain it. From the evidence adduced, it was the defendant who had to be fearful of identification by the victim.

After observing all of the witnesses and hearing all of the testimony, the jury refused to believe the defendant when he testified that it was really Sammy Clark who kicked and struck Miss Pichl.

We conclude that the evidence is sufficient to sustain defendant's conviction of second-degree murder.

*By the Court.*—Judgment affirmed.