ANDERSON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 137. Submitted under sec. (Rule) 251.54*
*December 2, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 879.)

236

"...

The cause was submitted for the plaintiff in error on the brief of *Beverly A. Temple* of Milwaukee; and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *David J. Becker,* assistant attorney general.

BEILFUSS, J. The defendant has raised several claimed errors dealing with the sufficiency of the complaint, search and seizure, admission of photographic evidence, use of illustrative evidence, failure to suppress a statement made by the defendant, errors in jury instructions, sufficiency of the evidence and improper sentence.

In the early morning hours of September 21, 1972, Officers Fred Schwartz and Joseph Galewski of the Oak Creek police department were in their squad car patrolling an area of highway and bridge construction between the 100 block and 1300 block of West Ryan Road in Oak Creek. It was raining and the mud and gravel road was closed to through traffic. At approximately 2:57 a. m., the officers observed a 1964 Ford parked in the 500 block of West Ryan Road, facing east. As the officers approached the car in their squad from the east, the car's headlights went on and it started moving towards them. One of the officers turned on the red flashing light but the car continued past them. Officer Schwartz testified that as the car went past, he observed that the driver was defendant Anderson, whom he recognized from prior contact.

Officer Schwartz turned the squad around and followed the car. He observed defendant Anderson switch seats with the other occupant, codefendant Robert Wallich, so that when the car came to a stop, Wallich was in the driver's seat and Anderson was in the front passenger's seat. The officers got out of the squad and approached the car, Officer Schwartz going to the driver's side and Officer Galewski going to the passenger's side. Wallich

denied switching seats. While inspecting Wallich's driver's license, Officer Schwartz shined his flashlight through a window into the back seat of the car and observed three heavy duty impact wrenches and a long tubular device lying on the rear floor. From his experience in road construction, Officer Schwartz recognized the tools as being used in road construction work. Schwartz asked who the tools belonged to and defendant Anderson said they were his. Anderson then asked why they were being held, to which Officer Schwartz replied "for switching drivers and possible suspicion of theft."

The officers then called for an assist squad, which arrived about five minutes later. Officer Galewski left with one of the newly arrived officers to inspect other parts of the construction area. A few minutes later he radioed back to Officer Schwartz that one of the trailers used on the construction site, about three blocks away, had been broken into. Officer Schwartz then placed the defendants under arrest for burglary.

The tools, which were subsequently removed from the car, were stamped with the initials "W. B. & I." Mr. Floyd King, general foreman for the Wisconsin Bridge and Iron Company, which was involved in the Ryan Road construction project, testified that when he left the construction site at about 4:20 p. m., on September 20th, he locked his office trailer with a padlock. Inside the trailer were a torque wrench with a five-foot handle, used to measure the pounds of tension on bolts, and several impact wrenches, used to fasten bolts on the bridgework. These tools were kept in locked tool boxes inside the trailer. When Mr. King returned to the jobsite the next morning, September 21st, he observed that the trailer door was open and the locks were missing on the trailer door and on the tool boxes inside. The torque wrench and two impact wrenches were missing. Mr. King was in exclusive control of the trailer, and no one else had

keys to it except personnel at the company's main office. He had not given consent to anyone to enter the trailer between 4:20 p. m. on September 20th and 7:30 a. m. on September 21st.

The jury found both defendants, who were tried jointly, guilty of burglary in violation of sec. 943.10 (1) (d), Stats. Defendant Wallich was sentenced to an indeterminate term of not more than six years. Defendant Anderson was sentenced to an indeterminate term of not more than ten years. Codefendant Wallich is not a party to this appeal.

The defendant contends that the complaint in this action was insufficient to establish probable cause. In the complaint, Officer Schwartz, the complainant, stated on information and belief that the defendants William A. Anderson and Robert C. Wallich:

". . . on the 21st day of September A. D., 1972, in the County of Milwaukee, Wisconsin, did feloniously and intentionally enter a locked construction trailer, the property of Wisconsin Bridge and Iron Co., Inc., without the consent of Wisconsin Bridge and Iron Co. and with intent to steal therein, contrary to Section 943.10 (1) (d) of the statutes. . . .

"Complainant further states that his information is based upon the statement of Floyd King, the general foreman of Wisc. Bridge & Iron Co. crew presently constructing a bridge at the 800 block of W. Ryan Rd.; Floyd King further states that his company has placed a truck in the 800 block of W. Ryan Rd., said trailer being used as an office, that he personally closed and locked said trailer on 9–20–72 at 4:20 P. M. That at said time numerous large construction tools belonging to Wisc. Bridge & Iron Co. were located in said trailer.

"Floyd King further states he returned to said site at 7:30 A. M. on 9–21–72 and found the lock missing from the trailer and found the tools stored therein missing. Floyd King further states he thereafter observed tools missing from said truck in the Oak Creek Police Station. Floyd King further states he gave no one permission to enter said trailer after 4:20 P. M. on 9–20–72.

"Complainant further states his information is based upon personally observing defendants seated in an auto stopped in the 500 block of W. Ryan Rd. at approximately 2:50 A. M. on 9–21–72 and then observed said auto drive off. Complainant further states he then stopped said auto and observed numerous construction tools in said auto. That he removed said tools and found them to bear the initials WB&I and took said tools to the Oak Creek Police Dept. where he displayed them to Floyd King."

The defendant argues that the complaint, which is based in part on the hearsay statements of Floyd King, fails to satisfy the two-pronged test of *Aguilar v. Texas* (1964), 378 U. S. 108, 114, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723; and that *State v. Knudson* (1971), 51 Wis. 2d 270, 274, 187 N. W. 2d 321, requires that when the complaint is based on other than eyewitness observations of the complainant, *i.e.*, hearsay, the reliability of the hearsay must be established in the complaint by indicating:

" '. . . (1) The underlying circumstances from which he [the complainant] concludes that the informant is reliable; and (2) that the underlying circumstances or manner in which the informant obtained his information is reliable.' " .

With respect to the second requirement, it is obvious from a reading of the complaint that the statements of Floyd King were based on his personal observations at the trailer and at the Oak Creek police station. The very fact of such direct, personal observation, rather than some mere hunch or inference from the circumstances, attests to the reliability of the manner in which Mr. King obtained his information. As stated by this court in *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 446, 173 N. W. 2d 175:

"Here the fact is that the complaint shows that all whose information was relied upon were eyewitnesses to the portion of the event they related to the sworn complainant. If hearsay is to be credited at all for this

limited purpose, what better basis can there be than that of eyewitness testimony. . . ."

See also: United States v. Harris (1971), 403 U. S. 573, 91 Sup. Ct. 2075, 29 L. Ed. 2d 723; State v. Paszek (1971), 50 Wis. 2d 619, 628, 184 N. W. 2d 836; State v. Mansfield (1972), 55 Wis. 2d 274, 279, 198 N. W. 2d 634.

The other prong of Aguilar requires that the complaint establish the underlying circumstances from which the complainant concludes that the informant is reliable. In State v. Paszek, supra, page 630, this court stated:

"A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply conveys a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.

"However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied." See also: State v. Knudson, supra, page 276.

In the complaint here, verification is established by the fact of Officer Schwartz's observation that the tools

bore the initials "W. B. & I." and that such tools were identified by Mr. King in Officer Schwartz's presence.

If a citizen-informer is relied on by the police and is an eyewitness to the facts he relates to the complainant, his reliability is sufficiently established. Because the complaint in this case contains both verification and observational reliability, the reliability of Mr. King is sufficiently established and both prongs of *Aguilar* are satisfied.

The allegations of the complaint establish probable cause as required by *State ex rel. Cullen v. Ceci, supra.* The complaint sets forth that the trailer's lock was removed and tools formerly stored therein were missing, that no one had permission to enter the trailer and that the defendants were apprehended in the early morning hours, near the trailer, with tools missing from the trailer. There can be no doubt but that such allegations could reasonably give rise to a finding of probable cause and warrant further criminal proceedings.

The defendant next asserts that the tools discovered on the rear floor of the auto were seized pursuant to an illegal search and should not have been admitted in evidence. At the hearing on defendant's motion to suppress, the officers testified that they observed the parked car in the early morning of September 21st. The car was located in a construction area, which was open only to local traffic and which had been the scene of recent thefts of gasoline from fuel tanks stored in the construction site. It was for this reason that they were patrolling the area. As the officers approached the car with its red light flashing, it drove past it in the opposite direction. Officer Schwartz observed Anderson driving. He recognized Anderson and had received a police report identifying Anderson as a known burglar. When the officers pursued the car, Schwartz observed the two occupants change positions. When the car was stopped, Schwartz approached the driver's side and asked Wallich for his license. While examining it, Schwartz shined

his light into the back seat and observed the tools, which he immediately recognized as being used in road construction. Schwartz asked whom the tools belonged to and Anderson said they were his. The defendants were then advised that they were being detained for suspicion of theft, were ordered from the car, and were advised of their rights. Officer Galewski then went to investigate the site, discovered that a trailer had been broken into, and radioed back this information to Officer Schwartz, who then advised the pair that they were under arrest for burglary. He then opened the car door and observed that the tools bore the marking "W. B. & I."

The defendant alleges that he was arrested, his car searched, and its contents seized without probable cause. An examination of the chronology of events, however, reveals that these claims are without merit. As stated in *State v. Chambers* (1972), 55 Wis. 2d 289, 294, 198 N. W. 2d 377:

"Even though there is no probable cause to make an arrest, *Adams* [ *v. Williams* (1972), 407 U. S. 143, 145, 146, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612] makes clear that a police officer may 'in appropriate circumstances' detain a person for interrogation. In fact, *Adams* holds that it may be 'the essence of good police work' to briefly stop a suspicious individual 'in order to determine his identity or to maintain the status quo momentarily while obtaining more information. . . .' "

*See also,* sec. 968.24, Stats.[2] In light of the defendants' behavior and the officers' knowledge regarding past thefts in the area and the reputation of the defendant,

[2] "**Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped."

it is clear that the officers were justified in stopping the defendants and requesting to see the driver's operator's license.

It is likewise apparent that the observation of the tools in the car did not amount to an illegal search. As stated in *Warrix v. State* (1971), 50 Wis. 2d 368, 374, 184 N. W. 2d 189:

"The defendants argue the use of the flashlight at 2:15 o'clock in the morning to look into the interior of a car was an exploratory investigation in violation of their fourth amendment rights. A policeman may use a flashlight to bring into plain sight what natural light would have revealed if the 'look-see' had taken place in daylight. A search implies prying into hidden places for what is hidden. *Gouled v. United States* (1921), 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. The observance by sunlight or artificial light of that which is open and patent is not a search. *Smith v. United States* (4th Cir. 1924), 2 Fed. 2d 715; *United States v. Lee* (1927), 274 U. S. 559, 47 Sup. Ct. 746, 71 L. Ed. 1202. The argument a flashlight renders unreasonable what is otherwise a reasonable search is itself unreasonable. We agree with the statement in *Sweeting v. State* (1969), 5 Md. App. 623, 249 Atl. 2d 195, 198, '. . . where an officer is in a place where he is lawfully entitled to be (as here, on a public street), the shining of a flashlight at night inside the vehicle while remaining outside does not amount to an illegal search under the fourth amendment.' " [3]

In addition to the facts of the defendants' suspicious conduct, the recent reported thefts, and discovery of construction tools in their car, and Officer Galewski's investigation of the site and report that one of the trailers had been broken into, there can be no doubt that Officer Schwartz acted properly in opening the car door

[3] *See also: State v. Bell* (1974), 62 Wis. 2d 534, 541, 215 N. W. 2d 535; *Milburn v. State* (1971), 50 Wis. 2d 53, 57, 58, 183 N. W. 2d 70.

and seizing the construction tools which he had already observed. As stated in *State v. Bell, supra,* pages 542, 543:

". . . it is unreasonable to require the police in the early stages of an investigation at night to wait until the following morning to get a warrant to seize an unlocked car and its contents. It is true Bell was in custody and could not drive the car away, but the possibility of someone else stealing it or its contents justify the police search of it to determine whether it should be taken for safekeeping. The police are not required to post a guard all night until they can find a magistrate the next morning who will issue a warrant on the basis of the knowledge the police obtained by seeing what was in plain sight. . . ."

The trial court did not err in denying defendant's motion to suppress evidence taken from the back seat and rear floor of defendant's car.

In the course of the trial, the trial court admitted into evidence as State's Exhibit 2, a photograph of an impact wrench bearing the engraved initials "W. B. & I." Officer Schwartz testified that he took the photograph of one of the tools taken from the back seat of the defendant's car and that it was a fair and accurate representation. The photo was taken at 4 a. m., on September 21st at the Oak Creek police department.

The defendant contends that the trial court erred in admitting the photograph because, he alleges, there was "no testimony identifying the impact wrench in the photograph as being the one allegedly taken from the premises of the alleged burglary." This apparently is a challenge to the relevancy of the evidence, although it is difficult to be sure because the defendant does not further explain his contention or cite any authority to support it. In any event, it is clear that there was evidence to establish that the wrench depicted in the photograph was stolen from the trailer by defendant.

Officer Schwartz testified that the wrench, bearing the initials "W. B. & I.," was taken from defendant's car and photographed by him at the Oak Creek police station and that he displayed the tools to Floyd King later in the morning on September 21st. King testified that three wrenches were stolen from the Wisconsin Bridge and Iron Company trailer and that they were returned to him at the Oak Creek police station on the morning of September 21st. Sec. 904.01 of the Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 66, provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See also: State v. Becker* (1971), 51 Wis. 2d 659, 188 N. W. 2d 449; *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 146 N. W. 2d 801.

In light of the testimony referred to above, there can be no doubt but that the photograph made the fact that a burglary had been committed more probable and, therefore, relevant.

The defendant next argues that the photograph was improperly admitted because there was not "any explanation offered by the State as to why the impact wrench that was taken was not admitted in evidence rather than the photograph." Again there is no elaboration of the allegation, but it seems that defendant is basing his objection on the failure to produce the "best evidence." If so, the defendant's reliance on that theory is misplaced. There is no rule in Wisconsin requiring the "best" evidence, except with respect to writings, recordings and photographs, where the original is required when the content of the writing, recording or photograph is sought to be proved.[4] With respect to photographs,

---

[4] Sec. 910.02, Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 354; Walstead, *The "Best Evidence" Rule*, 43 Wisconsin Bar Bulletin (April, 1970), p. 34.

where the contents are sought to be proved, the subject of the photo need not be offered, but only the original photograph. Secs. 910.01, 910.02, Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 351, 354.

As to the admissibility of photographs in general, this court stated in *Neuenfeldt v. State* (1965), 29 Wis. 2d 20, 32, 33, 138 N. W. 2d 252:

". . . It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a material situation when the photographs better show that situation than does the testimony of witnesses. *Baxter v. Chicago & N. W. R. Co.* (1899), 104 Wis. 307, 80 N. W. 644; *Baraboo v. Excelsior Creamery Co.* (1920), 171 Wis. 242, 177 N. W. 36; *State v. Carlson* (1958), 5 Wis. (2d) 595, 93 N. W. (2d) 354; . . .

". . . the corollary to the rule in the *Baxter Case* [is] that 'where photographs are not substantially necessary or instructive to show material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations, they should be excluded.' *Selleck v. Janesville* (1899), 104 Wis. 570, 575, 80 N. W. 944." *See also: Gustin v. Johannes* (1967), 36 Wis. 2d 195, 204, 153 N. W. 2d 70; *State v. Wallace* (1973), 59 Wis. 2d 66, 86, 207 N. W. 2d 855.

In this case, the photograph was useful to the jurors to give them a clear idea of the kind of tool involved and the likely use to which it would ordinarily be put. The defendant has failed to suggest, nor can we surmise, how the photographic depiction of the wrench was in any way prejudicial or likely to "divert the minds of the jury to improper or irrelevant considerations." The trial court did not abuse its discretion or otherwise err in admitting the photograph.

In the course of the trial, the state produced a torque wrench, a device with a five-foot long handle which could be expanded to ten feet long. It had a dial at one end and

was used to measure the pounds of tension on bolts in the bridge.

Officer Schwartz testified that he had seen a wrench like it in the back seat of defendant's car when it was stopped on Ryan Road. Mr. King testified that a wrench like it was taken from his trailer office sometime between 4:20 p. m. September 20th and 7:30 a. m. September 21st. He also explained the use and value ($250) of the torque wrench. No one ever testified that the wrench was the same wrench taken from the trailer, but it is clear from the record that the jury was not misled in that regard. The torque wrench was never moved or admitted into evidence.

The wrench was demonstrative evidence and, as such, was not improperly utilized. Demonstrative evidence, whether a model, a chart, a photograph, a view, or, as here, a duplicate, is used simply to lend clarity and interest to oral testimony. As noted above with respect to photographs, the duplicate is merely incorporated by reference into a witness' testimony. As stated in *McCormick:*

"Among the most frequently utilized types of illustrative evidence are maps, sketches, diagrams, models and duplicates. . . .
"While all jurisdictions allow the use of demonstrative terms to illustrate and explain oral testimony, there is considerable diversity of judicial opinion concerning the precise evidentiary status of articles used for this purpose. Even in the majority of jurisdictions where there is no apparent bar to, or restriction upon, their full admission, it is not uncommon for maps, models, etc., to be displayed and referred to without being formally offered or admitted into evidence. . . .
"Illustrative exhibits may often properly and satisfactorily be used in lieu of real evidence. As previously noted, articles actually involved in a transaction or occurrence may have become lost or be unavailable, or witnesses may be unable to testify that the article present in court is the identical one they have previously observed.

Where only the generic characteristics of the item are significant no objection would appear to exist to the introduction of a substantially similar 'duplicate.' While the matter is generally viewed as within the discretion of the trial court, it has been suggested that it would constitute reversible error to exclude a duplicate testified to be identical to the object involved in the occurrence. . . ." McCormick, *Evidence* (2d ed.), pp. 528–530, sec. 213.

In *Hernke v. Northern Ins. Co.* (1963), 20 Wis. 2d 352, 359, 122 N. W. 2d 395, this court stated:

"Almost all courts have recognized that whether demonstrative evidence is to be received rests largely in the discretion of the trial judge. *Walker v. Baker* (1961), 13 Wis. (2d) 637, 651, 109 N. W. (2d) 499; Gordon, Demonstrative Evidence, 32 Wisconsin Bar Bulletin (February, 1959), p. 11. It has been observed that many people learn and understand better with their eyes than they do with their ears. . . ."

As in the case of the photograph, the wrench served merely to illustrate the oral testimony. We detect no prejudice resulting from its implementation.

The defendant contends that the trial court erred in admitting his statement, made in response to Officer Schwartz's question, that the tools in the back of the car were his. At the hearing on the motion to suppress this statement, Officer Schwartz testified that after stopping the car, due to the suspicious conduct of the defendants and the time and place at which they were discovered, Officer Schwartz approached the driver's side of the car and, while examining Wallich's driver's license, observed the tools in the rear of the car. He asked whom the tools belonged to and defendant Anderson replied that they were his. At this time the defendants had not been given their *Miranda* warnings, but Officer Schwartz testified that they were not under arrest, he did not have his gun drawn and he did not in any way prod either of

the defendants into answering his question. It is defendant's contention that the above facts constitute a custodial interrogation and that therefore the statement is inadmissible in light of the fact that he was not advised of his rights prior to the question.

These facts demonstrate the case of "on-the-scene questioning" which do not require the *Miranda* warning. In *Miranda v. Arizona* (1966), 384 U. S. 436, 477, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, the court limited its holding by stating:

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. . . .

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. Illinois,* 378 U. S. 478, 492. . . . Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . ."

*See also: Gedicks v. State* (1974), 62 Wis. 2d 74, 82, 214 N. W. 2d 569; *Britton v. State* (1969), 44 Wis. 2d 109, 113, 114, 170 N. W. 2d 785.

The defendant claims the trial court erred in the instruction given to the jury in referring to the wrenches as "recently stolen property." This phrase was adequately and properly qualified by the instruction ". . . Whether property may be considered as recently stolen depends upon all the facts and circumstances shown by the evidence. . . ."

A complaint is also made by the defendant as to the propriety of giving the standard instruction on circumstantial evidence. The instruction given was appropriate

and accurate. There was no error in the instructions given to the jury by the trial court.

The defendant next alleges that the evidence was insufficient to sustain his conviction. This court will not reverse for insufficiency unless:

". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.'" *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183. *See also: Bailey v. State* (1974), 65 Wis. 2d 331, 353, 222 N. W. 2d 871.

". . . The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. . . ." *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. *See also: Bowden v. State* (1973), 57 Wis. 2d 494, 495, 204 N. W. 2d 464.

There are three essential elements to the crime of burglary under sec. 943.10 (1) (d), Stats.: (1) An intentional entry into the locked enclosed cargo portion of a truck or trailer, (2) without consent of the person in lawful possession, and (3) with intent to steal. *State v. Hall* (1972), 53 Wis. 2d 719, 720, 193 N. W. 2d 653.

The evidence in the record fulfills these requirements and is sufficient to sustain the conviction.

Pursuant to verdict of guilty, the trial court sentenced the codefendant Wallich to an indeterminate term not to exceed six years. Defendant Anderson was sentenced to the maximum, an indeterminate term not to exceed ten

years. The court pointed out that the difference in sentences was based on the difference in the criminal records of the two defendants.

The defendant contends that his sentence resulted from an abuse of discretion on the part of the trial court. As sole authority, the defendant cites *Farrar v. State* (1971), 52 Wis. 2d 651, 662, 191 N. W. 2d 214, for the proposition that:

> " '. . . it is enough to state that on a conviction for burglary, with the defendant having a long record of difficulties with the law and society and having been on probation and making a poor adjustment while under supervision, the sentence of two years appears reasonable.' "

That decision did not, however, indicate that a sentence of ten years would have been unreasonable in that case, and most certainly cannot be used to suggest that ten years was an unreasonable sentence in this case. The trial court emphasized that the sentence was imposed after a consideration of the defendant's long criminal record.

The prior criminal record of the defendant reveals that for the past several years the defendant has been guilty of a great many misdemeanors of various kinds and some felonies. The trial court could well conclude the defendant has engaged in a long and persistent course of antisocial conduct with almost no evidence of any desire or attempt to "change his ways."

The sentence imposed did not constitute an abuse of discretion and was in substantial compliance with the decision of *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512. *See also: Hansen v. State* (1974), 64 Wis. 2d 541, 552, 553, 219 N. W. 2d 246.

Finally, it is contended by the defendant that he is entitled to a new trial in the interest of justice. Because this analysis of the record has failed to reveal any error

prejudicial to the defendant, we find no basis to grant a
new trial in the interest of justice.

*By the Court.*—Judgment and orders affirmed.