# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal No. | 2018AP1835-CR | Cir. Ct. No. 2015CF207 |
|---|---|---|

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DEANDRE M. SMITH,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County:  WILLIAM E. HANRAHAN, Judge.  *Affirmed*.

Before Blanchard, Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Deandre Smith appeals a judgment convicting him of battery and felon in possession of a firearm, as acts of domestic abuse, and an order denying his postconviction motions to vacate the judgment of conviction. Smith argues that he was denied effective assistance of counsel because his trial attorney mishandled both the victim's testimony and an unduly prejudicial photograph of a gun.  He also argues that the evidence was insufficient to convict him of the felon in possession charge.  Finally, he argues that the interests of justice warrant a new trial.  We reject Smith's arguments and affirm the circuit court.

## BACKGROUND

¶2    In 2014, Smith lived part-time with his then-girlfriend, B.M.J.  In December 2014, B.M.J. gave statements to police about Smith's alleged pattern of domestic abuse.  Among other things, B.M.J. described an incident that she said had occurred in her apartment two months earlier.  B.M.J. told the police that on October 28, 2014, she and Smith got into an argument, that Smith retrieved a handgun from a kitchen cabinet and used it to threaten her, and that the gun went off, sending one round through B.M.J.'s arm and into a wall.

¶3    The police investigated B.M.J.'s allegations, and officers took photographs of what B.M.J. described as the bullet wound in her arm and the bullet hole in the apartment wall.  At some point during the investigation, B.M.J. also provided the police with a photograph of what appeared to be a black handgun resting on bright red fabric along with what appeared to be a portion of a belt and an ammunition clip with one visible round.

¶4    The State charged Smith with multiple counts, including battery and felon in possession of a firearm.  Smith's trial counsel filed a motion in limine

seeking to prohibit the State from introducing the photograph "of the purported gun involved[.]" The sole asserted basis for this motion was that the State would lack a sufficient foundation to support admission of the photo.

¶5    The circuit court denied the motion at a pretrial hearing. During the hearing, the State described the gun photo as "demonstrative" evidence, but the court did not acknowledge or address this characterization and instead ruled on the foundation objection, deciding that the gun photo would "come in" if the State could establish a foundation. We discuss additional facts about the gun photo, the motion in limine hearing, and the court's pretrial ruling in the discussion section below.

¶6    The State called B.M.J. to the stand, and prior to her testimony, the State asked the circuit court to declare her a "hostile witness" for purposes of the rules of evidence. Trial counsel did not object, and the court granted the motion.

¶7    During her direct examination, B.M.J. made a blanket denial that the abuse she reported to the police had actually occurred, and she maintained that she had fabricated the allegations out of anger at alleged infidelities by Smith. The State asked a series of leading questions to elicit the contents of B.M.J.'s prior inculpatory statements to law enforcement, and trial counsel did not object to this method of questioning. B.M.J. admitted that she provided the gun photo to law enforcement, the State offered it into evidence, and trial counsel did not object.

¶8    On cross-examination, trial counsel focused on B.M.J.'s allegedly contentious relationship with Smith in an effort to undermine the credibility of the accusations she had made to police. Trial counsel's tactic reinforced B.M.J's testimony that she had given false inculpatory statements because of Smith's alleged infidelity.

¶9      During its deliberations, the jury asked to review several exhibits, including photos of B.M.J.'s injuries, photos of the alleged bullet hole in the wall, and the gun photo.  Trial counsel did not object to any of these exhibits going to the jury.

¶10      The jury convicted Smith of one count of misdemeanor battery, one count of strangulation and suffocation, and one count of felon in possession of a firearm.  The jury found Smith not guilty of the remaining counts, and the strangulation and suffocation count was later vacated on grounds not pertinent to this appeal.

¶11      Nearly three years after the trial, Smith filed a supplemental post-conviction motion challenging the remaining two convictions.  The circuit court held a *Machner* hearing,[1] and both B.M.J. and trial counsel testified.  The court concluded that trial counsel was not ineffective and dismissed Smith's motion in its entirety.

## DISCUSSION

¶12      Smith challenges the circuit court's rulings regarding ineffective assistance of counsel.  He also challenges sufficiency of the evidence to convict

---

[1] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App.1979).

him of felon in possession of a firearm,[2] and he asks us to grant a new trial in the interests of justice. We address each argument in turn.

## I. Ineffective Assistance of Counsel

¶13    We first address Smith's argument that he received ineffective assistance of counsel. To prevail on a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052 (1984); *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305. To satisfy the first prong, deficient performance, a defendant must show that counsel's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *Thiel*, 264 Wis. 2d 571, ¶19. To satisfy the second prong, prejudice, a defendant must show a "reasonable probability" that, absent the errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A court need not address both prongs "if the defendant makes an insufficient showing on one." *Id.* at 697.

¶14    An ineffective assistance of counsel claim presents a mixed question of fact and law. *Thiel*, 264 Wis. 2d 571, ¶21. Findings of fact include "the circumstances of the case and the counsel's conduct and strategy" and we uphold the circuit court's factual findings unless clearly erroneous. *State v. Knight*, 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992). "Whether counsel's performance

---

[2] Ordinarily, we would address a challenge to the sufficiency of the evidence before turning to issues that might require a new trial or other lesser remedies, in part because the remedy when the evidence is insufficient is prohibition of retrial. In this case, however, we reverse the usual order in the interest of clarity of presentation because the facts underlying Smith's somewhat involved ineffective assistance of counsel argument are central to his less involved sufficiency argument.

satisfies the constitutional standard for ineffective assistance of counsel is a question of law," which we review independently of the determination of the circuit court. *Thiel*, 264 Wis. 2d 571, ¶21. We address Smith's arguments about B.M.J.'s testimony and the gun photo in turn.

## A. B.M.J.'s Testimony

¶15 Smith argues that trial counsel mishandled B.M.J.'s testimony in three ways. For the reasons we now explain, we conclude that Smith fails to show that trial counsel was ineffective in any of the three ways.

¶16 First, Smith contends that trial counsel should have objected to the State's request to declare B.M.J. a "hostile" witness for evidentiary purposes. He argues that an objection was called for because the State asked the court to declare B.M.J. a "hostile" witness before she actually testified. According to Smith, WIS. STAT. § 972.09 (2017-18)[3] dictates that a witness may be declared hostile only after offering testimony inconsistent with a prior statement.[4]

¶17 We need not decide whether Smith's interpretation of WIS. STAT. § 972.09 is correct or whether the failure to object constituted deficient performance, since we conclude that Smith fails to show that he was prejudiced by the lack of an objection. The record reflects that as soon as B.M.J. started

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] WISCONSIN STAT. § 972.09 pertains to "criminal actions." It provides in pertinent part: "Where testimony of a witness … is inconsistent with a statement previously made by the witness, the witness may be regarded as a hostile witness and examined as an adverse witness, and the party producing the witness may impeach the witness by evidence of such prior contradictory statement."

testifying, it was immediately apparent that her testimony would be inconsistent with the statements she had previously made to the police. Thus, if trial counsel had objected to the State's request on the grounds that it was premature, he would have only delayed an inevitable ruling that B.M.J. could reasonably be deemed "hostile" to the prosecution for this purpose. Under these circumstances, Smith has not shown a "reasonable probability" that the result would have been different if trial counsel had objected. *Strickland*, 466 U.S. at 694.

¶18 Second, Smith argues that trial counsel should have objected "to the State's use of leading questions and inadmissible hearsay" during B.M.J.'s direct examination on the grounds that these questions violated the rules of evidence regarding hearsay and prior inconsistent statements.[5] The essence of Smith's argument appears to be that trial counsel could have and should have prevented the jury from learning about B.M.J's inculpatory prior statements to the police by making proper objections. Smith acknowledges that a witness may be impeached with prior statements that are not consistent with the witness's trial testimony. What was improper, according to Smith, was that the prosecutor elicited the substance of B.M.J.'s prior statements *without first* eliciting B.M.J.'s trial testimony on the same topics.

¶19 Putting aside other potential problems with Smith's argument, Smith fails to show that trial counsel's failure to object to the prosecutor's method of questioning B.M.J. was deficient, much less that it prejudiced his defense.

---

[5] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). Prior inconsistent statements are not hearsay and are admissible if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony. WIS. STAT. § 908.01(4)(a)1.

¶20    As to deficiency, the circuit court concluded that trial counsel's decision not to object was based on reasonable trial strategy. Courts "will not second-guess a reasonable trial strategy unless it was based on an irrational trial tactic or based upon caprice rather than upon judgment." *Strickland*, 466 U.S. at 689; *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. Here, trial counsel testified that he thought the State's performance was coming across poorly to the jury because the State appeared to be forcing B.M.J. to say "only what [the prosecutor] wanted to hear." He testified that he decided not to object because he thought the State's questioning was ineffective, and that making numerous formal objections would have alienated the jury. We agree with the circuit court that this was reasonable trial strategy.

¶21    As to prejudice, Smith fails to show that his defense was prejudiced because he does not explain how trial counsel could have prevented the jury from learning about B.M.J.'s prior statements to the police by objecting. If trial counsel had objected and the circuit court had sustained the objection, the State could have readily cured any problem by simply changing the order of its questioning. Specifically, the prosecutor could have first asked B.M.J. whether the incidents she reported to the police had occurred, and then impeached her with her prior statements. Smith does not identify a single statement that B.M.J. made to the police that could not have been properly admitted in this manner.

¶22    Third, Smith argues that during cross examination, trial counsel should have asked B.M.J. to tell "her story" about what "actually happened" on the dates of the alleged domestic abuse and how she actually got her injuries. Initially, we note that this argument rests on a false premise. Trial counsel *did* ask questions about B.M.J.'s injuries when, as he later explained at the *Machner* hearing, there was "verification or some substantiation that [Smith] was not

responsible for the injuries[.]"  For example, trial counsel knew that B.M.J. told her doctor that an injury to her eye had been caused by her infant son, and trial counsel asked B.M.J. about that incident.  Thus, although trial counsel did not ask many questions about the incidents, he did ask questions when he had a basis to anticipate an exculpatory favorable answer.

¶23     Additionally, Smith fails to show that trial counsel's decision not to ask questions about the other incidents was deficient performance.  During the *Machner* hearing, trial counsel testified that B.M.J. had refused to meet with him at his request before trial, and therefore, he could not anticipate what she would say at trial about many of the alleged incidents of abuse.  Trial counsel explained that he declined to ask questions when he did not know the answers because it risked eliciting surprise testimony damaging to Smith and would have opened the door to a potentially damaging redirect.  And trial counsel had another excellent reason to ask few questions about B.M.J.'s story—her testimony during direct examination was favorable to his client.  B.M.J. had already denied that any of the alleged incidents occurred, testified that she lied about the incidents to the police, and offered jealousy as her motive for lying.  As the circuit court aptly noted, "[i]t doesn't get much better than that" for a defense attorney.  The court concluded that trial counsel's strategy was reasonable, and we agree.

¶24     For the above reasons, we conclude that Smith fails to show that trial counsel was ineffective in his handling of B.M.J.'s testimony.

## B.  Gun Photo

¶25     Smith contends that trial counsel should have opposed admission of the gun photo on the grounds that it was not relevant and unduly prejudicial, and further, that trial counsel should have taken steps during trial to prevent the jury

9

from inferring that the photo depicted the gun that Smith was charged with possessing. For reasons we now explain, we conclude that Smith's arguments about the gun photo fail because they are built around an erroneous interpretation of the transcript from the pretrial hearing.

¶26 According to Smith, the circuit court imposed a limitation on the State's use of the gun photo by specifically ruling that the photo was admissible as demonstrative evidence only.[6] We recognize the basis for Smith's belief—during the course of discussion in the pretrial hearing, the prosecutor referred to the photo as "demonstrative" and then said "[w]e're not claiming that it was the gun" but rather that the gun was "consistent with" the photo.

¶27 The State's reference to the photo as "demonstrative" is puzzling, given the reported source of the photo, its appearance, and the nature of the felon in possession charge against Smith. Under the circumstances, we have difficulty seeing how this photo could reasonably have been presented to the jury as mere demonstrative evidence, and the State's reference may well have puzzled the circuit court for the same reasons.

¶28 More importantly, our independent review of the record reveals that the circuit court did not understand the prosecutor to be stipulating that the gun photo would be merely "demonstrative" evidence, and we conclude that no reasonable attorney in trial counsel's position would have believed that the court limited the photo to demonstrative use. Instead, a reasonable attorney, knowing

---

[6] The term "demonstrative evidence" generally refers to evidence "used simply to lend clarity and interest to oral testimony" and "in lieu of [substantive] evidence." *Anderson v. State*, 66 Wis. 2d 233, 248, 223 N.W.2d 879 (1974) (citations omitted).

what trial counsel knew at the time and having heard the circuit court's ruling, would have concluded that the photo was admissible as substantive evidence, provided that the State was able to establish foundation. We now explain in more detail why the record supports this conclusion, and then show how a proper reading of the record disposes of Smith's arguments.

¶29 First, it is apparent from the record that trial counsel knew that B.M.J. had told the police that the photo depicted the gun Smith had threatened her with—not some unknown gun that was merely "consistent" with that gun. In accordance with what he appeared to understand at this time, trial counsel's motion in limine described the gun photo as a photograph "of the purported gun involved." Then, during the motion hearing, trial counsel explained his understanding of the facts: "the alleged victim here e-mailed [the detective] a picture of a gun that she purported was the gun that was used in the incident." Thus, it is apparent that trial counsel understood and represented to the circuit court that the State would not offer the photo merely as demonstrative evidence, but instead as substantive evidence depicting the gun that B.M.J. accused Smith of possessing.

¶30 Second, it is also apparent from the transcript[7] that the circuit court based its admissibility ruling on the foundation grounds argued by trial counsel—

---

[7] The transcript of the exchange provides in pertinent part:

(continued)

11

not on any possible stipulation by the State about how it intended to refer to the photo once it was in evidence. The court asked how the photograph would be authenticated, and the prosecutor represented that B.M.J. would provide the foundation. The prosecutor then made the puzzling assertion that the photo was "demonstrative," but the court did not acknowledge this comment. Instead, the court ruled on the topic that had been presented to it, namely, foundation. On that topic, the court ruled that the photo could be admitted if the State established that

---

[TRIAL COUNSEL]: There was a sequence of events in which the alleged victim here e-mailed Officer Peterson a picture of a gun that she purported was the gun that was used in the incident. There was no identifying markers on that picture. It was something that she pulled from an Instagram account that was not associated with my client in any way. The user name was gibberish if nothing else. It was some kind of fictional name, and so there was no opportunity for us to inquire as to what the source of that picture fundamentally was. So those were our primary concerns with introducing that photograph of some otherwise unknown picture of a gun and trying to tie it to my client.

….

THE COURT: All right. This photograph, is there someone that's going to authenticate that photograph, or is it just at random?

STATE ATTORNEY: Yes. We do intend to authenticate it through [B.M.J.], and it's demonstrative, just saying that the gun was consistent with that. We're not claiming that it was the gun, but that she—she gave the photograph to say that the gun was consistent with this gun.

THE COURT: Is she the one that sent the photograph?

STATE ATTORNEY: She did. She e-mailed it to our detective.

THE COURT: And, if that can be established foundationally, then the photograph comes in. If it can't be, the photograph is out.

12

B.M.J. provided it to police.[8]   Thus, there is no suggestion that the court understood the State to be stipulating that it would use the gun photo exclusively as "demonstrative" evidence or that the court limited the gun photo to demonstrative use, and trial counsel had no basis to think that the photo was in fact admitted only for demonstrative purposes.

¶31    The *Machner* hearing was not held until more than three years after the trial.  During that hearing, Smith's new postconviction counsel asserted that the circuit court had limited the State's use of the gun photo to demonstrative purposes only, and no one challenged that characterization.   Postconviction counsel represented that "the State *repeatedly* assured the Court that it was only going to use this photo as demonstrative evidence," and that "the Court, *relying on [the State's] assertions*, said it would be *admissible for that purpose* …." (Emphasis added.)  As shown above, postconviction counsel's summary does not accurately reflect the transcript of the pretrial hearing.  And as explained below, it appears that the circuit court and trial counsel both accepted postconviction counsel's representation about the nature of the court's pretrial ruling at face value, without examining the relevant portions of the transcript.

¶32    For its part, the circuit court seemed puzzled by postconviction counsel's representations about the record,[9] and did not appear to have any independent recollection of limiting the State's use of the gun photo to

---

[8] Smith does not point us to any other occasion in the trial record where the gun photo was referred to as "demonstrative," and we have found none.

[9] During the *Machner* hearing, the court asked postconviction counsel:   "Would [Smith's trial counsel have had] a good reason for [objecting to the photo on grounds of relevance and prejudice]?  I'm not tracking here.  Do you think that the gun that this witness, the female witness, identified as [being] his gun that was on her couch is not relevant in a shooting case?"

demonstrative use. Although the circuit court eventually referred to the gun photo as a "demonstrative" exhibit later in the same hearing, it did so without apparent reference to the transcript and without making any findings about the nature of its pretrial ruling. Instead, the circuit court appeared to rely on postconviction counsel's mistaken representations about the record.

¶33 For his part, trial counsel testified that he believed that the circuit court had ruled that the gun photo could be admitted only as demonstrative evidence, but that trial counsel had not considered whether the State's use of the photo during trial violated the court's ruling or whether he should object. It is not surprising that trial counsel could not recall considering an objection since, as we have explained, the court did not actually limit the use of the gun photo. If trial counsel really did believe at the time of trial that the pretrial ruling had imposed that limitation, his subjective belief would not control our objective analysis—we consider instead what reasonable counsel in trial counsel's position would have believed.[10] More likely, by the time of the *Machner* hearing, trial counsel mistakenly assumed that postconviction counsel's interpretation of the transcript was accurate since the photo was only a small part of a fact-intensive trial that had concluded three years earlier.

¶34 For the reasons explained above, we conclude that a reasonable attorney in trial counsel's position would not have believed that the pretrial ruling limited the use of the gun photo to demonstrative evidence. We now explain why

---

[10] See *Harrington v. Richter*, 562 U.S. 86, 110, 131 S. Ct. 770 (2011) (we do not evaluate trial counsel's actions based on counsel's subjective state of mind, but based on an objective standard of reasonableness); *State v. Koller*, 2001 WI App 253, ¶8, 248 Wis. 2d 259, 635 N.W.2d 838 (we may "rely on reasoning which trial counsel overlooked or even disavowed").

this determination resolves Smith's remaining ineffective assistance arguments. Smith makes several arguments about trial counsel's handling of the gun photo, but each depends on the premise that the photo was admissible as demonstrative evidence only—a premise that we have expressly rejected.

¶35 First, Smith argues that trial counsel should have objected to the gun photo on the basis of relevance and prejudice. He argues that a photograph merely "demonstrative" of the gun that Smith was charged with possessing could have only marginal relevance, and any relevance is outweighed by undue prejudice because jurors would erroneously believe it to be a photo of the gun Smith possessed. Given that trial counsel knew that B.M.J. told police that the picture was of "the gun that was used in the incident," we conclude that Smith fails to show that his failure to make these arguments was deficient performance.

¶36 Second, Smith makes various arguments asserting that trial counsel erred by failing to ensure that the State used the gun photo for demonstrative purposes only. Smith argues that trial counsel should have objected to the State's direct examination of B.M.J, which arguably raised the inference that the photo showed the gun Smith allegedly possessed when he allegedly used it to threaten her.[11] He argues that trial counsel should have objected when a police officer testified that the gun in the photo "might be the gun that was used by the defendant in the October 28th incident … [b]ut, at a minimum, it resembled the gun."

---

[11] During this examination, the State asked B.M.J. whether she had described the gun Smith used to threaten her on October 28, 2014, to a detective, and B.M.J. testified she had described "a gun." The State asked B.M.J. whether she told the detective that "a friend of [Smith] had taken a picture of a gun while it was sitting on your couch" and had posted it on social media. B.M.J. admitted that she told the detective that "they took a picture of a gun … or they had a picture of a gun on their wall," and that she had emailed "that picture of a gun" to the detective.

Finally, he argues that trial counsel should have objected to the gun photo's submission to the jury during deliberations and requested a limiting instruction directing the jury to consider the gun photo only as demonstrative evidence. All of these arguments fail, since the pretrial ruling did not limit the use of the photo to demonstrative evidence.

¶37    For the reasons stated above, we have concluded that Smith fails to show that trial counsel's performance regarding the gun photo fell below an objective standard of reasonableness. Although we could resolve all of Smith's arguments about this gun photo on this basis, we also conclude that Smith fails to show that he was prejudiced by trial counsel's handling of the gun photo. As with his arguments about deficiency, Smith's prejudice arguments depend on the assumption that the circuit court restricted the use of the gun photo. Specifically, Smith argues that the jury was led to consider the gun photo as substantive evidence, rather than demonstrative evidence, and this may have factored into its verdict. Even if true, it would only be prejudicial had the circuit court actually restricted the gun photo to demonstrative use. Smith's prejudice argument fails for the same reasons as his argument about deficient performance.

## II. Sufficiency of the Evidence

¶38    We now turn to Smith's argument that there was insufficient evidence to convict him of felon in possession of a firearm. To support the conviction, there must be sufficient evidence that Smith (1) had previously been convicted of a felony, and (2) possessed a firearm on or about October 28, 2014. *See* WIS. STAT. § 941.29(1m)(a). Smith disputes the sufficiency of the evidence of the second element.

16

¶39     We may only reverse a conviction for insufficiency of evidence when "the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).  We review independently whether the evidence was sufficient to sustain the verdict. *State v. Grandberry*, 2018 WI 29, ¶10, 380 Wis. 2d 541, 910 N.W.2d 214.

¶40     Smith contends that the evidence offered to show he possessed a firearm consists solely of B.M.J.'s uncorroborated prior inconsistent statements. He acknowledges that unsworn prior inconsistent statements are admissible as substantive evidence to support a conviction.  *Vogel v. State*, 96 Wis. 2d 372, 386, 291 N.W.2d 838 (1980).  However, he asserts that Wisconsin law is unsettled as to whether such evidence alone, without corroboration, can prove guilt beyond a reasonable doubt.   He asserts that in other jurisdictions, prior inconsistent statements are not, by themselves, sufficient to support a criminal conviction, and he asks us to adopt a similar rule.

¶41     We need not decide whether Smith correctly characterizes the law, because he incorrectly characterizes the evidence.   There was ample evidence introduced at trial to corroborate B.M.J.'s prior statement to police that Smith possessed a firearm, including photos of B.M.J.'s alleged bullet wound, photos of the alleged bullet hole, and the gun photo.  Smith contends that these items do not corroborate B.M.J.'s statements to the police because they "get their only relevance" from B.M.J.'s recanted accusation.  But Smith does not explain why that matters.  He cites no authority for the proposition that once a victim recants inculpatory statements, evidence that would be relevant to corroborate the original statement is no longer admissible.  If this were true, domestic abuse cases would

17

regularly fail for lack of evidence, because such cases often involve recanting accusers. *See, e.g.*, *State v. Schaller*, 199 Wis. 2d 23, 42, 544 N.W.2d 247 (Ct. App. 1995) (noting that domestic abuse cases often involve alleged victims who recant the original statements to police, requiring factfinders to decide whether the original statement or the recantation is more credible). We conclude that the circuit court did not err by ruling that the evidence was sufficient to convict Smith on the felon in possession of a firearm count.

### III.  Interests of Justice

¶42     Smith's final argument is that he is entitled to a new trial in the interests of justice. This court may in its discretion set aside a verdict and order a new trial in the interests of justice where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried …." WIS. STAT. § 752.35.

¶43     Smith argues that the "real controversy" was not tried because trial counsel did not elicit additional testimony from B.M.J. about how she really sustained her injuries. Smith quotes *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996), which held that the "real controversy" is not tried if the jury is "erroneously not given the opportunity to hear important testimony that bore on an important issue of the case." We have already concluded that trial counsel's choice not to elicit this testimony was not erroneous, but instead based on reasonable trial strategy.

¶44     Additionally, the record suggests that B.M.J. would not provide the testimony he seeks at a new trial. During the *Machner* hearing, Smith's postconviction counsel questioned B.M.J. about the alleged incidents of alleged abuse, and B.M.J. repeatedly denied any recollection of the incidents. We have no

reason to believe that B.M.J. would provide at a new trial the testimony she declined to provide at the *Machner* hearing. Smith identifies only one concrete detail that B.M.J. might testify to: during presentence investigations and at the sentencing hearing, B.M.J. stated that she received the scars on her arm not from a bullet wound but when a woman stabbed her with a grilling fork. Notably, however, these were not sworn statements. Even assuming that B.M.J. would say the same under oath, this new testimony would merely add context to more relevant testimony she gave at trial—that Smith did not shoot her in the arm on October 28, 2014 as the State alleged. *See State v. Avery*, 2013 WI 13, ¶18, 345 Wis. 2d 407, 826 N.W.2d 60 (new evidence that "merely chipped away" at the State's case was insufficient to warrant a new trial under WIS. STAT. § 752.35).

¶45    Typically, when courts grant new trials based on missing evidence, the value of the evidence is clear and compelling.[12] Smith identifies no case granting a new trial where, as here, the value of the missing evidence is instead almost entirely speculative. On these facts, we conclude that Smith fails to show that "the real controversy" has not been tried and that he is entitled to a new trial in the interests of justice.

¶46    For the reasons stated above, we affirm.

---

[12] *See, e.g.*, **State v. Armstrong**, 2005 WI 119, 283 Wis. 2d 639, 700 N.W.2d 98 (granting a new trial where DNA evidence would have excluded the defendant as a DNA match for hair and semen samples used at trial to identify the defendant as the perpetrator); **State v. Hicks**, 202 Wis. 2d 150, 549 N.W.2d 435 (1996) (granting a new trial where DNA evidence would have excluded the defendant as a DNA match for a hair specimen used at trial to identify the defendant as the perpetrator); **State v. Jeffrey A.W.**, 2010 WI App 29, 323 Wis. 2d 541, 780 N.W.2d 231 (granting a new trial in a sexual assault case where the perpetrator was alleged to have infected the victim with herpes and new evidence showed that the defendant did not have herpes).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.