STATE, Respondent, vs. PICKETT, Appellant.

*October 8—November 6, 1951.*

594

For the appellant there was a brief by *Willis E. Donley,* attorney, and *Terence N. Hickey* of counsel, both of Menomonie, and oral argument by *Mr. Donley.*

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

MARTIN, J. The rule is well settled that an accused may be convicted of statutory rape upon the uncorroborated testimony of a complaining witness. It is urged by appellant's counsel, however, that where such testimony lacks credibility, it should be corroborated as much as the facts and circumstances will allow, citing *Ganzel v. State* (1925), 185 Wis. 589, 591, 201 N. W. 724:

"It is true that convictions for sexual crimes must rest very largely upon the testimony of the complaining witness, as direct corroborating testimony is well-nigh impossible to procure. However, it is always legitimate to consider whether the subsequent conduct of the complaining witness is the usual and natural conduct of an outraged woman as bearing upon the credibility of her direct testimony."

Counsel contends that the failure of the complaining witness to tell her parents anything about the offense for six months thereafter is so unusual and so unnatural as to render her testimony incredible. Her explanation that she was ashamed and kept it to herself because she thought nothing would come of it was for the jury to consider, together with all other facts and circumstances. Having heard her tell her story and having observed her attitude on the stand, the jury obviously concluded that her testimony was credible. It certainly does not express such an abnormal attitude as to require disbelief.

So far as corroboration of her testimony is concerned, we have the testimony of the defendants themselves and of Wilma Dupont that they visited the Peterson farm on July 23d and that Pickett told Theo he wanted to collect some money from her father. The time of the visit is supported by the testimony of Mr. and Mrs. Peterson to the effect that

no one called at the home between 6 and 8 and that the only time that Theo was there alone with the smaller children was from 8 until approximately 11 that evening. Mr. Peterson said that Theo told him of Glen's visit, not at 8 when he returned from his work at the Watson farm, but at 11 when he returned from Humbird.

Since the evidence was conflicting, it was for the jury to decide whom it could believe. Furthermore, the court, who had the same opportunity as the jury to appraise the credibility of the witnesses, stated before sentences were pronounced:

"The jury found you guilty and I can say without hesitation that had this case been tried before the court without a jury, that this court would have found exactly as that jury found upon the testimony that was introduced here. They had ample evidence and in my opinion credible evidence upon which to return the verdict they did."

Error is assigned to the trial court in admitting evidence by the doctor of information given him by Theo as to the identity of the father of the child. Objection was made on the basis that it was: "Immaterial, it has no bearing on the question of statutory rape, just the question of paternity." The court overruled the objection: "I don't believe it is objectionable on that ground."

While the objection probably should have been sustained had it been made on the ground of hearsay, we cannot see that the evidence was prejudicial to the appellant here. In any event, the jury had already heard that the complaining witness accused Ulness of the act of intercourse, that she denied having had relations with anyone else, and that the child was born approximately nine months after the date of the alleged offense. The evidence objected to added little, if anything, to the clear inferences of the complaining witness' testimony.

*By the Court.*—Judgment affirmed.