GAUTHIER, Plaintiff in error, v. STATE, Defendant in error.*

*September 10—October 5, 1965.*

* Motion for rehearing denied, without costs, on November 4, 1965.

414

For the plaintiff in error there was a brief and oral argument by *Rodney Lee Young* of Ladysmith.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HEFFERNAN, J.  The defendant's principal allegation of error is that there was insufficient credible evidence to support the court's finding that he was guilty of the crime charged.  He also asks that in the interest of justice the judgment be set aside and a new trial ordered.

The burden of proof upon the state is the same whether the case is tried before a jury or before a court.  That burden is to prove the defendant guilty beyond a reasonable doubt.

The test applied upon appeal to this court is whether the "evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." [2]

As the burden of proof is the same whether the trial is to the court or to a jury, the test to be applied to determine the sufficiency of the evidence is the same. *State v. Waters, supra.*

When testing the sufficiency of the evidence, this court is not required to be convinced of the guilt of the defendant beyond a reasonable doubt, but only that the jury or the court could find the defendant guilty beyond a reasonable doubt. *State v. Stevens, supra.*

The credibility of the witnesses is properly the function of the jury or the trier of fact, in this case the trial judge. It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial.

Defendant's main allegation on this appeal is that the testimony of the complaining witness, a seventeen-year-old girl, is so lacking in detail as to be unconvincing and hence incredible. The acts of intercourse complained about occurred in 1961 when the complainant was fourteen years old. The trial, however, was not held until 1964. The delay was occasioned mainly by the defendant's flight to avoid prosecution. Considering the lapse of time, it is not surprising that some of the details escaped the memory of this girl. However, each of the three incidents was described with sufficient particularity to prove that penetration had occurred. It is not necessary to allege and prove every detail leading up to the

[2] *State v. Waters,* ante, pp. 148, 153, 135 N. W. (2d) 768; *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. Stevens* (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502.

seduction and rape. In each instance the child either described the act of penetration or referred to it as "intercourse." Our court has previously held that, "When one of understanding testifies to a completed act of sexual intercourse it is sufficient proof of penetration." *Athos v. State* (1929), 199 Wis. 228, 230, 225 N. W. 692; *Cleaveland v. State* (1933), 211 Wis. 565, 570, 248 N. W. 408, 410.

The record shows that the complaining witness, in response to a question by the trial judge, correctly defined "intercourse." It cannot be said that she used this term without knowing its meaning. Her testimony showing her understanding of the meaning of the word by which she described the conduct is sufficient proof of penetration.

The fact that the complainant was unable to describe relatively minor details surrounding each occurrence does, of course, reflect to a small degree upon her credibility, but, as is well established in this state, the credibility of witnesses and the weight to be given to their competent testimony is for the trial court to determine. *Birmingham v. State* (1938), 228 Wis. 448, 451, 279 N. W. 15.

The victim in this case first accused her father of being the offending person, but later she changed her story and accused her uncle, the defendant. A record of prior inconsistent statements does reflect upon the credibility of the witness. Here, however, her conduct was explained by the testimony that the defendant threatened to shoot her if she "didn't go along with him" (in the accusation of the father). In any event, the utterance of inconsistent statements is again a matter going to credibility, which is a matter to be determined by the jury or the finder of fact. *State v. Fries* (1945), 246 Wis. 521, 525, 17 N. W. (2d) 578.

The complainant, after withdrawing the accusation against her father, remained silent for several weeks before accusing her uncle. In the case of a forcible rape, courts have long placed great emphasis on the failure of a complaining wit-

ness to report the rape. It is thought that to report such an occurrence to a parent or friend is so natural that the failure to do so is of probative importance and casts doubt upon an allegation of rape. Here, however, there is no contention that the child was violated against her will. The evidence, in fact, is indicative of consent. Consent or lack of it, however, is not an element of the crime charged. Nevertheless, it is not to be expected that the child would complain about intercourse consented to as she would about a sexual act forced upon her. The same test, therefore, should not be used to judge her credibility. In any event, this is again a matter of credibility to be determined by the trial judge when he is acting as the fact finder. *State v. Fischer* (1938), 228 Wis. 131, 135, 279 N. W. 661, 662.

An act of intercourse seldom takes place before the eyes of witnesses. Hence, it is rare that there is any corroboration in the usual sense. Our courts have long accepted the testimony (if believed) of the complainant as sufficient to sustain a conviction of rape or sexual intercourse with a child. *Lanphere v. State* (1902), 114 Wis. 193, 89 N. W. 128; *Haley v. State* (1932), 207 Wis. 193, 240 N. W. 829; *State v. Fischer* (1938), 228 Wis. 131, 279 N. W. 661; *State v. Fries* (1945), 246 Wis. 521, 17 N. W. (2d) 578; *State v. Pickett* (1951), 259 Wis. 593, 49 N. W. (2d) 712. The testimony of the complainant must be convincing and not inherently incredible. In the case of *Cleaveland v. State, supra,* the court stated that when the evidence upon its face bears the stamp of unreliability, the testimony is suspect and must be corroborated. In *Cleaveland,* however, the testimony of the complainant in regard to a material fact was disputed by the several eyewitnesses. In the instant case no facts were presented that would lead the court to view the testimony of the complaining witness with suspicion.

Moreover, the testimony of the complainant is substantially corroborated by notes exchanged between the complainant

and the defendant. These notes, which the defendant admits were written by him, indicate more than an avuncular concern for the child. They evince resentment and jealousy that she would sit with boys on the school bus. The defendant wrote to the girl, "Did you come sick yet. Have you went over before. How long if so." The finder of fact might well have, and did, as his opinion shows, associate this question with Gauthier's concern that the child was pregnant. In another note he wrote, "I . . . wanted . . . to hold and hug you and also make love to you."

These notes were found hidden in the barn at the complainant's farm home. It appears that after the defendant was ordered off the farm he attempted to have a brother of the complainant get the notes from where they were concealed and return them to the defendant. The boy, however, was unable to find the notes, and subsequently they were found by the father and turned over to the district attorney. The trial judge commented that, in his opinion, the defendant's anxiety at getting the papers from where they were secreted demonstrated a realization on his part that the notes would be incriminating. In any event, the notes are corroborative of an unusual degree of intimacy between the girl and her uncle. The inferences that the trial judge drew from these statements are not unwarranted and are corroborative of the child's testimony.

Defendant also claims that the trial judge committed error in the admission of evidence.

He contends that the court denied his request that all the notes found in the barn be put into evidence. The record fails to bear this out. Rather, it appears that defense counsel failed to seek the introduction of any additional notes, though the judge encouraged him to do so and the district attorney said he would not object. His contention is without merit.

The trial judge also permitted the introduction of an FBI "wanted" circular. This circular was published and cir-

culated following the issuance of a federal warrant for "unlawful flight" after the defendant's escape from jail while awaiting trial. This flyer was properly admitted into evidence as tending to show the fact of Gauthier's flight from custody. *Kanner v. United States* (7th Cir. 1929), 34 Fed. (2d) 863, 866.

"It is to-day universally conceded that the fact of an accused's flight, escape from custody . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 Wigmore, Evidence (3d ed.), p. 111, sec. 276.

See also 20 Am. Jur., Evidence, p. 276, sec. 298; and 1 Wharton's, Anderson, Criminal Evidence (12th ed.), p. 262, sec. 139.

The complainant was also permitted to testify from notes that she prepared almost three years after the offenses took place and about three months before the trial. She testified that she wrote the notes after the district attorney asked her to write down what she remembered, and were to "recall back three years before what happened." The testimony thus reveals that it was the witness' own recollection that was the basis of these notes and that was refreshed by them. Wigmore has stated the rule thus:

"That the paper was not drawn up *about the time* of the events is not a fault. The recollection may be equally refreshed by a recent note as by some contemporaneous record." 3 Wigmore, Evidence (3d ed.), p. 105, sec. 761.

See also McCormick, Evidence (hornbook series), p. 15, sec. 9; 98 C. J. S., Witnesses, p. 83, sec. 358; 58 Am. Jur., Witnesses, p. 324, sec. 579.

It was perfectly proper for the complainant to testify from the notes that she had prepared. In *Smith v. State* (1959),

205 Tenn. 502, 540, 327 S. W. (2d) 308, 325, the court stated:

"After two years time it was natural for anyone when they know they are going to be put on the witness stand to sit down and think about the matter and jot down notes before they got on the witness stand so that they could refresh their recollection from them."

The trial judge after careful questioning determined that it was the witness' own recollection that was refreshed and, hence, her testifying with the aid of notes, though not made contemporaneous with the event, was not error.

Additionally, though it appears that all the evidence of which the defendant complains was properly admitted, it should be remembered that this was a trial before the court and not a jury. While evidence that is not admissible in a jury trial is equally inadmissible in a trial to the court, yet this court views the situation as distinct. We have previously stated:

"In a case tried by the court the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different." *Birmingham v. State* (1938), 228 Wis. 448, 454, 279 N. W. 15, quoting from *Topolewski v. State* (1906), 130 Wis. 244, 109 N. W. 1037.

The evidence adduced, believed, and rationally considered was sufficient to prove the defendant's guilt beyond a reasonable doubt. There was nothing incredible about the testimony of the complaining witness and much of the testimony she gave was corroborated. Nor will the interest of justice be served by a new trial. Sec. 251.09, Stats., authorizes the supreme court in its discretion to order a new trial when it "shall appear to that court from the record, that . . . it is probable that justice has for any reason miscarried, . . ."

We see no evidence that the trial was not fair, or that a new trial would produce a different result. On the contrary, it would appear that the finding of the court was the inevitable consequence of the evidence properly before it.

The judgment of the court and the order denying a new trial are affirmed.

*By the Court.*—Judgment and order affirmed.