AUSTIN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 37.  Argued October 8, 1971.—Decided November 2, 1971.*
(Also reported in 190 N. W. 2d 887.)

For the plaintiff in error there was a brief and oral argument by *Andrew R. Reneau* of Milwaukee.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The sole issue as to both convictions is whether there is sufficient credible evidence to sustain the jury findings of guilty.

In *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183, we stated:

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether

the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775; *State v. Stevens* (1965), 26 Wis. (2d) 451, 132 N. W. (2d) 502. This ultimate test is the same whether the trier of the facts is a court or a jury. *State v. Waters* (1965), 28 Wis. (2d) 148, 135 N. W. (2d) 768; *Gauthier v. State* (1965), 28 Wis. (2d) 412, 137 N. W. (2d) 101. Invariably the briefs and arguments on this issue point to what the trier of the facts could have found or what this court should determine. The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

"The sufficiency test is often stated in terms of burden of proof, but it is not unusual to state the test in terms of quantity of the evidence. See *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701. Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' "

We have set forth in *Lemerond v. State* (1969), 44 Wis. 2d 158, 162, 170 N. W. 2d 700:

" 'The credibility of the witnesses is properly the function of the jury or the trier of fact, in this case the trial judge. It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial.' *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671."

Although the testimony adduced in behalf of the defendant may dispute or contradict some of the facts as hereinafter set forth, the jury, from the credible evidence, could believe the following material facts, which in our opinion are sufficient to sustain the convictions on both counts.

For quite some period of time before September 5, 1970, Douglas Austin, Sr., the defendant, had lived with the deceased, Nina Dotson, as her common-law husband, in her home at 1720 North 21st Street in Milwaukee. During the evening hours of September 5, 1970, the defendant and the deceased had an argument which culminated in physical violence to the extent that the defendant hit the deceased on the head with a shoe and a gun. An autopsy revealed a laceration of the scalp that could have come from the blows struck during this altercation.

The deceased called Albert Payton, Jr., and asked him to stay at her home that night. Payton complied and slept on a couch in the living room. Nina Dotson and her thirteen-year-old son, Tim Harmon, slept in their respective bedrooms. The front and back doors of the living quarters were locked and all the lights except a bathroom light were turned out. However, Austin had a key, and a chair was found outside under the open bathroom window.

Payton testified that at about 1:30 to 2 a. m., September 6th, he was awakened by the defendant coming toward him through the kitchen door. He stated the defendant had a gun in his hand and that "the gun was making a noise, but it didn't fire." (An expert witness examined the gun and said it would make a noise if it misfired.) Payton then grabbed the defendant's arm and they then scuffled or wrestled to the floor. The gun fired and Payton was struck in the head and neck by a bullet, but survived.

Nina Dotson, the deceased, came from her bedroom. The testimony varies as to how close the deceased came to the two men scuffling on the floor and as to whether she was responding to Payton's call for a knife. The gun fired again and the bullet struck Nina Dotson in the chest area. Although she was able to get outside, she died within a few minutes from this gunshot wound.

After Nina Dotson was shot, Payton was able to get the gun from the defendant and kept it trained on him until the police arrived.

Payton testified that the defendant came into the house with the gun and that the gun was in the defendant's possession at all times until after the shots were fired.

The defendant admitted the gun was his and that it was ordinarily kept under the mattress in Nina Dotson's bedroom, but testified that on the night in question Payton had the gun and that the gun was in Payton's hands when it was fired.

The jury, within its proper province, could accept the testimony of Payton and reject the testimony of the defendant. From the credible evidence most favorable to the state the jury could conclude beyond reasonable doubt that the defendant engaged in conduct regardless of life and evincing a depraved mind when he shot Nina Dotson, and as such he was guilty of murder in the second degree.

The defendant contends the credible evidence does not show the requisite intent to kill required of murder in the first degree.

Sec. 939.32 (2), Stats., reads:

"An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime

except for the intervention of another person or some other extraneous factor."

From the credible evidence the jury could believe the defendant entered the Dotson house with a gun in his hand. When Payton proceeded towards him he attempted to fire the gun. It misfired. Payton then grasped defendant's wrist, and they began to struggle. The defendant then fired the gun three times. One bullet pierced Payton's ear and neck. There was a conflict in testimony as to who possessed the gun, but on the record the jury's conclusion that defendant controlled the gun and shot it three times can reasonably be deduced from the evidence.

There were two intervening factors that prevented defendant from killing Payton. One factor was the misfiring of the gun. The second factor was Payton's grasp of defendant's wrist to prevent further shots being aimed at Payton.

Wis J I—Criminal, Part II, 1105, states and we approve the following as an accurate statement of the law:

". . . If one person (assaults another violently with a dangerous weapon, likely to kill), . . . then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended."

The jury could find an intent to kill in this situation, an intent that would have been realized if the gun had not misfired and if Payton had not grabbed defendant's arm. From these facts and permissible inferences the jury could find the defendant was guilty of attempted first-degree murder.

*By the Court.*—Judgment and order affirmed.