JOHNSON, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–405–CR. Submitted on briefs September 7, 1978.—Decided October 3, 1978.*
(Also reported in 270 N.W.2d 153.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Marguerite M. Moeller,* assistant attorney general, and *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. Upon this review the defendant challenges the trial court's refusal to give a requested specific instruction on the identification of the defendant and the refusal of the trial court to instruct and submit to the jury the lesser included offense of second-degree murder.

At about 3:30 in the afternoon of August 30, 1975, the deceased, Clyde Smith, was shot and killed as he stood outside a tavern located on the corner of 14th and West Wright Streets in the City of Milwaukee.

Beverly Mathis lived across the street from the tavern. She was about to enter the tavern to purchase some cigarettes at the time of the shooting. She testified that defendant Johnson and Clyde Smith were standing outside the tavern facing each other at a distance of six to seven feet when she walked past them to enter the building. She didn't know if the two were talking or not at the time. As she reached the top of the stairs

and just prior to entering the tavern door, she heard, but did not see Smith say—"Let's talk, put the gun down, don't shoot." On hearing the statement she turned around and saw defendant point a gun and fire at Smith who was still facing defendant. Running into the tavern as soon as she heard the first shot, Mathis was shot in the ankle. She heard three rapid shots fired in all.

Mathis testified that she had seen defendant on many previous occasions, although she didn't know him personally. She was shown photos of the defendant and others by the police while in the hospital. She testified that she recognized the defendant from the photos but did not identify him to the police at the time, since she was reluctant to get involved. Mathis also identified Johnson in court at the preliminary hearing.

Nothing obstructed her clear view of the shooting. Neither was the sun so bright that her vision was affected.

Matthew Kimble, a seven-year-old boy, testified that he was playing "hide-and-seek" across the street from the tavern when the shooting occurred. While hiding from his friends behind some garbage cans, he saw defendant shooting a gun at two people. He saw Smith facing Johnson and heard Smith say, "Don't shoot!" Then he heard three shots fired.

Matthew was able to identify defendant in a line-up and from photos shown him by police. He indicated that he had previously seen defendant at the Kimble house and the Kimble Cafe and had, in fact, been introduced to defendant by his (Matthew's) uncle who rehearsed songs with the defendant at the Kimble home.

Matthew Kimble's mother, Debra Kimble, was permitted to testify regarding what her son had related to her about the shooting. She declared that Matthew told her—"Al [defendant] shot two people."

Willie Daniels testified that he was down the street from the tavern when the shooting occurred; however he could not be precise about how far away from the parties he was standing. After he heard the first shot he saw defendant with a pistol. Clyde Smith was not facing Johnson at this time. Daniels did not hear Smith say, "Don't shoot!"—but did hear three shots fired.

Daniels identified the defendant as the person who shot Smith, and testified that he had seen defendant more than once prior to August 30, 1975, but that he did not know him personally.

Daniels was also permitted to testify regarding his knowledge of Smith's character and behavior. In response to a question on cross-examination regarding Smith's treatment of other people, Daniels declared— "he would push people around if he could."

Dr. Lawrence Clowry, a pathologist, performed the autopsy on Smith and determined that death was caused by a gunshot wound which penetrated the heart and lungs. It was Dr. Clowry's opinion, based on the presence of fragments of bone projecting from back to front and on an examination of the deceased's clothing, that the bullet entered from the back. Dr. Clowry reached this conclusion despite the fact that the bruise or ridge frequently surrounding an entry wound was absent from the wound in the back, but present around the chest (exit) wound. Clowry also indicated that he found no gunpowder around the bullet hole in the jacket or on Smith's back. Clowry also testified that he was unable to deduce from the physical evidence how far the two parties were from each other when the shots were fired and Smith was hit.

Testimony by Milwaukee police officers revealed that two spent slugs, either .38 or .357 caliber, were recovered at the scene. However, it could not be conclusively said that they were actually the shells fired. The murder weapon was not recovered.

Monti Lutz, firearms analyst, testified that the presence of grease around the bullet hole on the back of the jacket indicated the bullet entered from the back.

Finally, Bobby Smith, bartender at a tavern located about a block away, testified that defendant and Clyde Smith were in his tavern at approximately 8:30 or 9 o'clock on the morning of the shooting. He declared, "I heard they had a little argument about something but I didn't know what it was all about." Defendant asked Bobby Smith (no relation) to tell Clyde Smith to leave him alone, which the bartender did. Thereafter, defendant left the bar. Clyde Smith remained and was still there when the bartender went off duty after 2 p.m.

The defendant did not testify and rested his case without offering any evidence, except cross-examination of the state's witnesses.

The defendant asked the court to give an identification instruction, Wis J I—Criminal, Part I, 141, which reads in its entirety as follows:

"141 **Where Identification of Defendants Is an Issue**
"The identification of the defendant is in issue in this case. If you find that the crime alleged was committed, before you may find the defendant guilty you must be satisfied beyond a reasonable doubt that the defendant is the person who committed [it]."

An instruction for second-degree murder was also requested. Both requests were denied by the court. After deliberating about four hours the jury returned verdicts of guilty on both counts. The defendant filed a notice of motion and motion for a new trial dated November 19, 1976. A brief in support of the motion, advancing the same arguments which defendant makes to this court, was submitted. A hearing was held and the motion was denied. In denying the motion for a new trial the court reiterated the reasons it gave at the trial

for refusing to give the two instructions defendant requested. As to the matter of an identity instruction, the court stated that the question of identity was in no way put in issue by the testimony and evidence in the record because all the eyewitnesses who testified regarding the actual shooting were positive about the identification of the defendant. Similarly, with respect to the instruction for the lesser included crime of second-degree murder, the court said there was no basis in the evidence for an acquittal on the greater charge. In light of that fact, the court concluded, submission of a lesser degree would be unreasonable.

It is well established, and both parties here agree, that a trial court is not required to give requested instructions unless the evidence reasonably requires it.[1] However, a defendant in a criminal case, when he properly requests, is entitled to have the jury consider any defense which is supported by the evidence.

Ultimate resolution of the issue of the appropriateness of giving particular instruction turns on a case-by-case review of the evidence, with each case necessarily standing on its own factual ground. The first issue to be resolved then is whether there was sufficient evidence in the present case to raise an identity question and to warrant the giving of the requested instruction.

As a preliminary matter, it should be noted that where the defendant appeals from the denial of a request instruction, "the evidence is to be viewed in the most favorable light it will reasonably admit from the standpoint of the accused." *Jones (George Michael)*

[1] *Fletcher v. State,* 68 Wis.2d 381, 385, 228 N.W.2d 708 (1975); *Turner v. State,* 64 Wis.2d 45, 51, 218 N.W.2d 502 (1974); *Belohlavek v. State,* 34 Wis.2d 176, 179, 148 N.W.2d 665 (1967).

*v. State,* 70 Wis.2d 41, 48, 233 N.W.2d 430 (1975);
*Ross v. State,* 61 Wis.2d 160, 211 N.W.2d 827 (1973).
As mentioned above, the defense rested without present-
ing any testimony. The defendant contends he is en-
titled to an identification instruction because of the
testimony adduced during the extensive cross-examina-
tion of the state's three eyewitnesses to the events. As
a general matter, it certainly could not be argued that
a defendant may never sustain the evidentiary burden
of his theory of defense in this way. The question
arises, however, whether defendant in this case sustained
it.

The defendant extensively cross-examined the three
witnesses who identified him. He contends that the
accuracy of the identifications is challenged and that
it was a question of credibility for the jury. The trial
court, which of course heard the evidence and saw the
witnesses, stated the evidence revealed the identification
to be positive without equivocation by witnesses who
all recognized the defendant because of having seen him
before. There is no testimony that would even suggest
that the actors in the events under consideration were
anyone other than the deceased Smith and the defendant
Johnson. This fact, coupled with the affirmative
unequivocal identification by witnesses who, by virtue
of past experience, recognized the defendant and who
were in such proximity so as to be able to do so,
does not create a question of identity that reason-
ably required the requested instruction. This is especial-
ly so where, as here, the instructions actually given to
the jury specifically informed the jurors of the proper
burden of proof, the necessity to prove each element of
the crime, the presumption of innocence and their re-
sponsibility in determining weight and credit of the
testimony. We conclude that under the circumstances

of this case it was not error to refuse the requested instruction on identity.

The defendant requested a second-degree murder jury instruction and this request was denied.

Multiple verdicts are to be submitted to the jury when the evidence reasonably admits of conviction on either offense. A typical statement of the rule provides as follows:

". . . If the evidence, in one reasonable view, would suffice to prove guilt of the higher degree beyond a reasonable doubt, and if, under a different, but reasonable view, the evidence would suffice to prove guilt of the lower degree beyond a reasonable doubt, but leave a reasonable doubt as to some element included in the higher degree but not in the lower, the court should, if requested, submit the lower degree as well as the higher." *Zenou v. State,* 4 Wis.2d 655, 668, 91 N.W. 2d 208 (1958).

Further amplification of the rule was provided in *State v. Bergenthal,* 47 Wis.2d 668, 675, 178 N.W.2d 16 (1969):

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. However, there is not to be read into the rule the requirement that 'there are not reasonable grounds on the evidence to convict of the greater offense.' That goes too far. Where the defendant is able to demonstrate that there is no reasonable view of the evidence that warrants conviction on the greater offense, and the trial court agrees, there remains no issue on such charge to go to the jury. The purpose of multiple verdicts is to cover situations where under different, but

reasonable, views of the evidence there are grounds either for conviction of the greater or of the lesser offense. The lesser degree verdict is not to be submitted to the jury unless there exists reasonable grounds for conviction of the lesser offense and acquittal on the greater."

Recently the court in *Ross v. State*, 61 Wis.2d 160, 172–73, 211 N.W.2d 827 (1973), supplied an additional emphasis concerning the role of the judge in applying the rule to the facts of a particular case:

"Under these tests, the evidence is to be viewed in the most favorable light it will 'reasonably admit of from the standpoint of the accused.' This test does not call for a weighing of the evidence by the trial judge. He is merely obliged to examine the evidence to determine whether the proposed instruction is based upon mere conjecture and whether, if a verdict were returned on the lesser included offense, he would be obliged to set it aside. To instruct on the lesser included offense, speaking only to the evidentiary factors revealed at trial and not to the question of included elements, the evidence of the lesser included offense must be relevant and appreciable; and as considered most favorably to the defendant, the inclusion of the instruction must not be unreasonable. The question basically is whether a jury giving the evidence full credence could reasonably return a verdict of guilt on the lesser included offense."

As with the first issue, the parties essentially agree on the basic formulation of the rule, but disagree as to its application to the facts. Once again, since the test requires a case-by-case consideration (but not a weighing) of the evidence, examination of the holdings in other cases is of limited use.

The border line between murder in the first degree and murder in the second degree is very plain in statutory characterization, but whether it is one or the

other is often very difficult of determination on the evidence. *Ryan v. State,* 115 Wis. 488, 92 N.W. 271 (1902); *Miller v. State,* 139 Wis. 57, 119 N.W. 850 (1909). Intent to kill is the major distinction between the two. *Zenou v. State,* 4 Wis.2d at p. 668. "Intent is by its very nature rarely susceptible to proof by direct evidence." *Clark v. State,* 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974).

Essentially defendant contends that the instruction for second-degree murder should have been given since one reasonable view of the evidence would allow the jury to conclude that defendant never intended to kill Smith, but "that upon seeing him he became overridden with fear to the point of shooting at him, and ultimately killing him." The state, on the other hand, would have the court rely on certain presumptions drawn from the circumstances and hold that the only reasonable conclusion was that the shooting was done deliberately and with the intent to kill.

These presumptions are extensions of the general proposition that intent or state of mind can be inferred from the circumstances and from one's acts. These rules were recently reiterated by the court in *Garcia v. State,* 73 Wis. 2d 174, 183, 242 N.W.2d 919 (1976):

" 'While intent is a state of mind, it is not to be determined apart from the actions of the person involved. The state of mind or intent may reasonably be ascertained from the acts and conduct of a defendant, and the inferences fairly deducible from the circumstances.' *Jacobs v. State* (1971), 50 Wis.2d 361, 365, 366, 184 N.W. 2d 113.

"There is the presumption that one intends the natural and probable consequences of his acts. *State v. Cydzik* (1973), 60 Wis.2d 683, 697, 211 N.W.2d 421. In cases of first-degree murder, the fact that the defendant shot his victim in a vital part raises a presumption of intent. *Smith v. State* (1975), 69 Wis.2d 297, 303, 304, 230 N.W. 2d 858."

To the same effect, this court approved the following jury instruction in *Austin v. State*, 52 Wis.2d 716, 721, 190 N.W.2d 887 (1971), and *Fells v. State*, 65 Wis.2d 525, 534, 223 N.W.2d 507 (1974):

"Wis J I—Criminal, Part II, 1105, states and we approve the following as an accurate statement of the law:
" '. . . If one person (assaults another violently with a dangerous weapon, likely to kill), . . . then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended.' "

Similarly, in the recent case of *Holmes v. State*, 63 Wis.2d 389, 401–02, 217 N.W.2d 657 (1974), quoting *Eckman v. State*, 191 Wis. 63, 77, 209 N.W. 715 (1926):

". . . '. . . When one intentionally points a loaded gun at the vital part of the body of another and discharges it, it cannot be said that he did not intend the natural, usual, and ordinary consequences. . . .' . . . ."[2]

Turning to the present case, it is apparent that there are reasonable grounds in the evidence to convict defendant of first-degree murder. The defendant does not disagree with this. Rather the defendant contends that under a different reasonable view of the evidence the jury could have concluded that he was guilty of only second-degree murder. In support of his position the defendant points out that in the argument that took place between Smith and Johnson on the morning of the killing, Smith was the aggressor; that defendant merely asked that Smith be told to leave him alone; that Smith

---

[2] Note: Similar presumptions have been upheld in the face of a constitutional attack on due process grounds. *See generally, Mullaney v. Wilbur*, 421 U.S. 684, 702–03, fn. 31 (1975). Nor do such presumptions infringe one's privilege against self-incrimination. *See Turner v. United States*, 396 U.S. 398, 417–18 (1970); *Yee Hem v. United States*, 268 U.S. 178, 185 (1925); *Barnes v. United States*, 412 U.S. 837, 846 (1973).

had spent the entire morning in question in a tavern and that Smith would push people around if he could. It could be further argued that Smith was facing Johnson when the first shot was fired; that the testimony did not prove that Johnson "pointed the gun at the vital part" of Smith's body, merely that Smith was "hit" in a vital part.

The trial court, in ruling on the matter on the post-conviction motion for a new trial, stated as follows:

"On the question of lesser included offenses, I think the brief correctly states the law in the State of Wisconsin; that there must be some reasonable grounds in the evidence for a finding that there may be an acquittal on the greater charge and conviction on the lesser; that taking a reasonable view of the evidence the jury could have found that he did not commit the greater degree of homicide.

"In this case I believe that under any rule concerning lesser degrees of homicide, all of the evidence pointed to the first degree murder. There was nothing else before the jury.

"Even attempting to interpret the facts to give a basis for submission of a lesser degree of homicide, I think would have been unreasonable in the light of the strength of the State's case as to the charges that were submitted.

"To have instructed on anything else, I believe would have required the jury to indulge in not a search for the truth but to speculate, to conjecture, and perhaps even to compromise.

"The evidence to the first degree murder as this court viewed it, indicated that the shooting was plainly and simply assassination and that it was done intentionally and deliberately, and with the intent to kill."

We believe the trial court applied the right rule of law and this evaluation of the evidence correctly decided that this was not an appropriate case to submit the lesser crime of second-degree murder.

The evidence of an intentional killing substantially and readily supports the conviction of first-degree murder.

For a jury to acquit the defendant of first-degree murder and find him guilty of the lesser included crime of second-degree murder would, as the trial judge stated, require the jury to speculate, conjecture or even compromise. This record does not reveal reasonable grounds for an acquittal of first-degree murder and under a different view reasonable grounds for a conviction of second-degree murder.

We conclude the trial court did not err in refusing to submit the lesser included crime of second-degree murder.

We are also urged to order a new trial in the interest of justice. In view of our conclusions that the trial court did not err in the manner alleged, and that the evidence amply supports the conviction, a new trial in the interest of justice is not appropriate.

*By the Court.*—Judgment and order affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). In this case, as in *Lofton v. State*, 83 Wis.2d 472, 490, 266 N.W.2d 576 (1978) (Abrahamson, J., concurring opinion), the majority opinion does not address the issue whether "presumption language" in an instruction on the element of intent is valid, and the majority opinion should not be interpreted as approving such language.