COURT OF APPEALS
DECISION
DATED AND FILED

April 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1794**

STATE OF WISCONSIN

Cir. Ct. No. 1996CF962979

IN COURT OF APPEALS
DISTRICT I

IN RE THE COMMITMENT OF STANLEY E. MARTIN:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

STANLEY E. MARTIN,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Affirmed*.

Before Brash, P.J., Graham and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  Stanley E. Martin appeals the order denying his petition for discharge from a WIS. STAT. ch. 980 commitment.  Martin argues that the trial court failed to make ultimate findings of fact to support his continued commitment.  We reject his argument and accordingly, we affirm.

## BACKGROUND

¶2  Martin was initially committed as a sexually violent person pursuant to WIS. STAT. § 980.05 (1995-96) after the trial court found him to be a sexually violent person following a jury trial in 1996.[1]  He has filed numerous petitions, motions, and appeals in the intervening years.[2]  Underlying this appeal, Martin petitioned for discharge from commitment, pursuant to WIS. STAT. § 980.09 (2019-20)[3] on May 18, 2018.  The State did not contest Martin's right to a trial after conceding that Martin "proffered sufficient evidence to justify a full evidentiary hearing on his discharge petition."

¶3  The trial court conducted a court trial on Martin's discharge petition on September 27, 2018.  The State called Dr. Bradley Allen, a licensed

---

[1] The Honorable Jeffrey A. Kremers presided over the trial and entered the commitment order.  The Honorable Pedro Colon presided over the discharge trial and entered the order denying discharge.

[2] *See State v. Martin*, No. 1997AP668, unpublished slip op. (WI App Apr. 7, 1998); *State v. Martin*, No. 2006AP2413, unpublished slip op. (WI App Jan. 15, 2008), *clarified on reconsideration* (WI App Mar. 31, 2008), *State v. Martin*, No. 2013AP1442-NM, unpublished op. and order (WI App Nov. 7, 2014).  The record further includes at least one motion for habeas corpus in 1998, which was denied in 2000; petitions for supervised release in 1997 and 1999; and petitions for discharge in 2000, 2002, 2010, 2012, 2015, 2017, as well as the petition underlying this appeal in 2018.  This court has accepted his voluntary dismissal of appeals in 2002, 2006, 2009, 2010, and 2018.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

psychologist employed as a Chapter 980 evaluator at Sandridge Secure Treatment Center, the facility where Martin is committed. Dr. Allen testified that he evaluated Martin "upon a record review" because Martin "declined an interview" with him. To perform a record review, Dr. Allen explained his methodology:

> Sandridge maintains an extensive record database of each patient. And so I review all of the available 980 related documents. I conduct an assessment of risk using actuarials. I assess long-term vulnerabilities or dynamic factors using structured professional judgment. I assess protective factors. I assess psychopathy. I determine whether or not the person fulfills diagnostic criteria under the DSM-[V] for any types of mental disorders. I analyze whether or not the person is ready for supervis[ed] release based upon statutory criteria, and then I also analyze whether the person is appropriate for discharge based upon statutory criteria.

¶4    Dr. Allen's Chapter 980 evaluation report was admitted as evidence. He testified to the three elements necessary for continued commitment as a sexually violent person, under WIS. STAT. ch. 980: (1) conviction(s) for sexually violent offenses; (2) a predisposed mental health condition or a diagnosis that predisposes the person to commit acts of sexual violence; and (3) that the person must be more likely than not to commit another sexually violent offense.

¶5    Dr. Allen reviewed Martin's criminal history: a charge of robbery at age seventeen in 1975, charges of rape and attempted murder in 1976 with a conviction of endangering safety regardless of life for which his sentence was imposed and stayed, and a charge of rape that resulted in a conviction only for endangering safety regardless of life in 1978, for which he was confined in prison until 1984. Dr. Allen's report showed that while in prison, Martin masturbated in the presence of a female officer and received a conduct report. After his release, he absconded from parole supervision in July 1984, and was subsequently apprehended in Illinois for aggravated assault, for which his parole was revoked.

3

On parole in 1987, he was charged with first-degree sexual assault and false imprisonment and convicted of second-degree sexual assault as a repeater, for which he was sentenced to prison and released on parole in 1994. During that prison term, he was convicted of battery by prisoner and received two conduct reports for exposing himself and touching a female officer and grabbing and kissing the hand of a female officer. In 1995, his probation was revoked for making romantic advances to a female caseworker, testing positive for cocaine in a urinalysis, and threatening a resident. While in the House of Corrections awaiting a placement in a halfway house as an alternative to revocation, he received numerous conduct reports for disrespect toward female officers including shouting obscenities, exposing himself, and masturbating in front of female officers.

¶6      Dr. Allen determined that Martin had three relevant diagnosable mental illnesses: "other specified paraphilia disorder, exhibitionistic disorder, and other specified personality disorder with anti-social traits." Dr. Allen diagnosed the paraphilia disorder because Martin's sexual behavior was "directed at other people. He repeatedly raped and/or sexually assaulted [at least three] adult women" and "his behavior was not inhibited by signs of distress or the pain and suffering of the person." For the exhibitionistic disorder, Dr. Allen considered this a "compulsive" behavior and that "exposing himself and masturbating in front of staff" during multiple incarcerations was aggressive. The final diagnosis for

"other specified personality disorder with the anti-social features" was based on his "failure to conform to social norms with respect to lawful behavior."[4]

¶7    Dr. Allen's testimony then turned to the question of Martin's risk of committing another sexually violent offense if he were discharged. *See* WIS. STAT. §§ 980.02(2), 980.09(3). Dr. Allen testified that Martin has not participated in any sex offender treatment at Sandridge. He noted that in his review of Martin's records, he found no evidence of Martin admitting he committed the offenses for which he was convicted or taking responsibility for them. Dr. Allen testified that according to "actuarial assessments," not participating in treatment does not increase an offender's risk, but "it depends on their behavior…. Those types of things have an impact with increasing risk potentially, even in a secured structured setting."

¶8    Dr. Allen acknowledged that Martin had not received any behavioral reports during the 2018 review period, but Dr. Allen explained that fact did not equate to Martin no longer being a danger. Dr. Allen stated that "[m]any offenders are able to conform to a structured supervised setting." He acknowledged that Martin has functioned relatively well in a structured setting and has had improved behavior in the past several years. However, Dr. Allen was concerned that behaviors emerge "when offenders are released to a less restrictive setting." He noted that "Martin was revoked on three separate occasions from community placement" and Dr. Allen considered that Martin had "difficulties when that structure is removed or lessened."

---

[4] Dr. Allen considered that Martin might have antisocial personality disorder, but Dr. Allen lacked information about Martin's life and criminal activities prior to his fifteenth birthday, which is necessary for that diagnosis.

¶9      Dr. Allen explained that part of his risk determination was based on the Static-99R assessment tool,[5] which is a ten point scale of "static factors" based on "concrete information" including "[a]ge, previous offenses, convictions, charges, convictions for sexual offenses, whether or not the victim was a male[,] whether or not the victim was related, whether or not the person was convicted of a non contact sexual assault, [and] whether or not the index offense included violence." Dr. Allen determined that Martin's score was "originally … a seven. And because he turned 60, then it is a reduction of two points so it would be a five."

¶10     Dr. Allen testified that he placed Martin in the "high risk/high needs" base group "[b]ased upon his dynamic risk factors [and] long term vulnerabilities." To assess Martin, he considered whether Martin's "Static-99R score represented his lifetime risk of reoffending" and Dr. Allen had to "consider[] undetected offending as well." Dr. Allen ultimately determined that Martin met the criteria to continue being committed, with a lifetime risk of more than 50% likely to commit another sexually violent offense. In his report, he stated "at this time, to a reasonable degree of psychological certainty, that Mr. Martin's degree of risk is in a category that exceeds the legal threshold of 'more likely than not' that he will commit another sexually violent offense should he be discharged."

¶11     Martin's counsel questioned Dr. Allen about his methodology. Dr. Allen explained he applied extrapolation based on "empirical research" to

---

[5] Dr. Allen explained to the court that the Static-99R is an actuarial assessment that considers unchanging factors but also considers differences in age over time. The factors are derived from analyses of studies of sexual offenders and sexual offending risks. The assessor tallies each factor presented by the subject out of a total of ten possible points.

determine Martin's real and lifetime risk. Dr. Allen explained that the actuarial tools and assessments are time limited, and by statute, the Chapter 980 evaluator must determine "absolute lifetime risk" and consider "undetected" offenses.

¶12    In support of his petition for discharge, Martin called Dr. David Thornton, a psychologist who has researched the evaluation and assessment of sex offenders. Martin consented to be interviewed by Dr. Thornton for the creation of his report, dated April 6, 2018, which was received into evidence. During the trial, Dr. Thornton testified that he believed there were significant changes in Martin over the years. The first change he noted was that statistically "the older somebody is when they are released the less their risk of all kinds of future offending is. But, specifically, we know this applies to sexual offending." The second change he noted was Martin's "behavior record," which Dr. Thornton described in his testimony as showing "no sexual misconduct … no violence. He does sometimes become agitated or upset about things, but he controls himself." Dr. Thornton opined that Martin should be discharged in his report and he recited the same at the trial.

¶13    Dr. Thornton diagnosed Martin "with a personality disorder and also disorders related to the use of stimulants and alcohol." He assessed Martin using "the Static-99R," and used a tool that measured his "long term structured risk score." His method is to "develop a risk estimate based on criminal history, age, and long term psychological risk factors … and then look at change, and then abate risk to some degree below that that initial estimate depending on how much change there has been." Similar to Dr. Allen, Dr. Thornton scored Martin a five on the Static-99R. Also similar to Dr. Allen, Dr. Thornton assessed Martin "as having an elevated level of physiological risk factors in his history" and determined Martin would fall into the "High Risk/High Need Norms" category.

7

¶14    Dr. Thornton explained that the benefit of treatment was to change behavior, and while Martin has not participated in treatment, he has changed his behavior. In contrast to Dr. Allen, Dr. Thornton highlighted that Martin has made his own changes, and that meant his changes would be "potentially more stable than" if they had resulted from institutional treatment. Based on his review, he opined that Martin's ultimate risk for new acts of sexual violence is "certainly below 40 percent. I think, it's probably more likely in the range of 25 or 30 percent."

¶15    On October 19, 2018, the trial court issued an oral decision, stating that it reviewed the parties' letter briefs, and the reports from the two doctors. In determining whether to grant or deny Martin's petition for discharge, the court had to consider the "likelihood of re-offense" and how the assessments evaluated the effect of "advanced age." The trial court summarized that there is no dispute "that Mr. Martin has not … availed himself of any of the treatment" at Sandridge. Although the court considered Dr. Thornton's ideas that lack of treatment could be indicative that Martin may be ready for release, it ultimately concluded that:

> without treatment it is impossible to in any way quantify what measure of likely decrease of, you know, future sexual behavior would be. And that based on what I have reviewed, I think, that treatment is an indicator which would perhaps strengthen Mr. Martin's position at some point. But based on what I have heard today it does not.

¶16    The court denied Martin's petition. The trial court referred to this matter as a petition for supervised release on the record, but clarified that it was denying discharge. The court then memorialized its decision in a written order, which stated: "On this date the Trial Court found, based on all of the reports, trial records, testimony, and evidence … that the Respondent, Stanley Martin Jr.

8

continues to meet the criteria as a Sexually Violent Person under WIS. STAT. § 980.01(7), and therefore does not meet the criteria for discharge."

¶17    We granted extensions for the appointment of postconviction counsel and ordering transcripts.  This appeal follows.

## DISCUSSION

¶18    Martin argues that the trial court failed to find the ultimate facts that the State met its burden to show that he was a sexually violent person in need of continued commitment.  *See* WIS. STAT. § 805.17(2).  First, Martin argues that the trial court's findings were insufficient.  Second, he argues that because the trial court found that it was impossible to quantify Martin's risk, the State was unable to meet its burden and Martin should be discharged.  Finally, he argues that the trial court failed to follow mandatory statutory procedure to address supervised release in the event that the court denies the discharge petition and continues an offender's commitment.

¶19    Martin first argues that the trial court's finding were insufficient under WIS. STAT. § 805.17(2).  Although the trial court's oral ruling and written order are brief, we are persuaded that the court found that Martin continued to meet each of the three criteria for commitment.  We consider this statement by the trial court highly relevant:

> And I know that the Defense argues that there are reasons by which—for which I shouldn't let [sic] any credence to Dr. Allen's conclusions.  And just to be clear, I think, that those reasons are frankly not enough to dispel Dr. Allen's rationale for coming up to his conclusion which indicates that Mr. Martin is not ready for [discharge].

9

We interpret this statement by the trial court as a finding that Dr. Allen was credible, and that the court was adopting Dr. Allen's conclusions that Martin met the criteria for commitment. Our interpretation is bolstered by the court's written order, entered the same day, stating that Martin "continues to meet the criteria as a Sexually Violent Person under WIS. STAT. § 980.01(7)."

¶20    The balance of Martin's argument fundamentally misstates our function on appellate review. "At trial, the State has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person." WIS. STAT. § 980.09(3). Only last year our supreme court reaffirmed that the standard of review appropriate to commitment under ch. 980 is that standard we use to review criminal convictions. *See State v. Stephenson*, 2020 WI 92, ¶31, 394 Wis. 2d 703, 951 N.W.2d 819 (citing *State v. Curiel*, 227 Wis. 2d 389, 417, 597 N.W.2d 697 (1999)).

¶21    Under that standard, we will not reverse an order denying a discharge petition based on insufficient evidence unless the evidence, viewed most favorably to the State and the commitment, is so insufficient in probative value and force that it can be said as a matter of law that no reasonable factfinder could have found by clear and convincing evidence that the defendant still met the criteria for commitment as a sexually violent person. *See id.*, ¶30. If there is any possibility that the factfinder could have drawn the appropriate inferences from the evidence proffered at trial to find that the defendant is a sexually violent person, we must affirm the verdict unless the evidence on which the inference is based is incredible as a matter of law. *See State v. Kienitz*, 227 Wis. 2d 423, 434-35, 597 N.W.2d 712 (1999). We will not disturb the trial court's factual findings unless they are clearly erroneous and we accept reasonable inferences from the facts

available to the trial court.  *See Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607.

¶22    In a trial on a petition for discharge, "the [S]tate has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person."  WIS. STAT. § 980.09(3).  In order to continue Martin's commitment under chapter 980 on the ground that he remains a sexually violent person, the State was required to prove three elements by clear and convincing evidence:  (1) that Martin has been convicted of a sexually violent offense; (2) that Martin has a mental disorder that predisposes him to acts of sexual violence; and (3) that Martin is dangerous to others because the mental disorder makes it more likely than not that he will engage in one or more future acts of sexual violence.  *See Stephenson*, 394 Wis. 2d 703, ¶7.

¶23    When we consider the State's evidence showing that Martin remains a sexually violent person, it rests in part on Dr. Allen's testimony.  As discussed above, it is clear that of the two experts, the trial court relied upon Dr. Allen and found him credible.  "The credibility of the witnesses is properly the function of the jury or the trier of fact, in this case the trial judge."  *Gauthier v. State*, 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965).  We will sustain the trial court's fact finding unless the evidence "is inherently or patently incredible."  *Id.*  Here, the trial court's findings are not clearly erroneous because Dr. Allen's testimony and report are not inherently or patently incredible.

¶24    The State established the first element for continued commitment with Dr. Allen's testimony and report that showed Martin was convicted of several sexually violent offenses.  Dr. Allen testified that the 1978 "conviction appeared to be sexually motivated."  Further, he testified that Martin has "received sanctions

11

for his institutional violations of sexual conduct," which included masturbating in the presence of female officers and exposing himself. In our review of the record, the original petition for commitment was predicated on a conviction for sexual assault pursuant to WIS. STAT. § 940.225, which falls within the definition of "sexually violent offense" under WIS. STAT. § 980.01(6). We conclude sufficient evidence exists that the State proved the first element by clear and convincing evidence.

¶25 The State established the second element with Dr. Allen's testimony; Martin's expert witness, Dr. Thornton, also concluded Martin had a mental disorder. In this context, a "'[m]ental disorder' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." WIS. STAT. § 980.01(2). At trial, Dr. Allen testified that Martin had three relevant diagnosable mental illnesses: "other specified paraphilia disorder, exhibitionistic disorder, and other specified personality disorder with anti-social traits." We conclude sufficient evidence exists that the State proved the second element by clear and convincing evidence.

¶26 In support of the third element, the State again relied upon Dr. Allen's testimony. Dr. Allen testified that when he assessed Martin's lifetime risk of reoffending, as required by statute, he considered multiple issues including static factors such as Martin's score of five on the Static-99R and his placement in "high risk/high needs" base group "[b]ased upon his dynamic risk factors [and] long term vulnerabilities." We note that Martin's own expert, Dr. Thornton, assessed Martin the same score and base grouping. Dr. Allen applied extrapolation based on "empirical research" to determine Martin's "absolute lifetime risk" based on known and "undetected" offenses. Dr. Allen ultimately concluded that Martin met the criteria to continue being committed: a lifetime risk

that he was more likely than not to commit a sexually violent offense if he were discharged.

¶27 Martin contends that the State failed to meet its burden on the third element, showing that Martin was more likely than not to reoffend, because the trial court made a finding that it was impossible to quantify Martin's risk of reoffending. This is an improper characterization of the trial court's finding. We acknowledge that, at one point, the trial court stated that it agreed "with Dr. Allen that in the absence of treatment there is no way to quantify the likelihood that [Martin] will not re-offend." However, the record shows that Dr. Allen did quantify the likelihood that Martin would reoffend. At another point, the trial court stated that "without treatment it is impossible to in any way quantify what measure of likely decrease of, you know, future sexual behavior would be." The court then went on to state that treatment was an "indicator which would perhaps strengthen Mr. Martin's position at some point [in the future]. But based on what I have heard today it does not." In other words, treatment might result in a decrease in Martin's risk to reoffend, but he has not participated in treatment. Therefore, the court concluded it would be illogical to consider Martin's argument and Dr. Thornton's theory that Martin's risk of reoffending was reduced.

¶28 Considering the third element, a reasonable factfinder, based on Dr. Allen's testimony and report, could conclude that Martin would, more likely than not, commit another act of sexual violence if he were released into the community. Here, as discussed above, the trial court made that conclusion. We acknowledge that Martin's expert offered an alternate interpretation of Martin's risk to the community; however, we do not perform an independent review of Dr.

Thornton's evidence.[6]  We instead look to the record to see if a reasonable factfinder could have come to the conclusion that Martin's petition for discharge should be denied.  *See **Stephenson***, 394 Wis. 2d 703, ¶37; ***State v. Poellinger***, 153 Wis. 2d 493, 506-07, 451 N.W.2d 752 (1990).  Here, the record supports that the State proved by clear and convincing evidence that Martin continues to "meet[] the criteria for commitment as a sexually violent person."  WIS. STAT. § 980.09(3); *see **Stephenson***, 394 Wis. 2d 703, ¶40.  We conclude that there was sufficient evidence in the record to affirm the trial court order.  *See **Curiel***, 227 Wis. 2d at 419.

¶29     The final issue is that the trial court did not address the procedure to consider authorizing supervised release.  "If the court or jury is satisfied that the [S]tate has met its burden of proof … the court shall proceed under [WIS. STAT. §] 980.08(4) to determine whether to modify the person's existing commitment order by authorizing supervised release …."  *See* WIS. STAT. § 980.09(4).  We conclude that this failure was harmless error because the trial court's findings would not support supervised release.  We affirm trial court decisions "if that court reached a result that the evidence would sustain had a specific finding supporting that result been made."  ***State v. Robert K.***, 2005 WI 152, ¶34, 286 Wis. 2d 143, 706 N.W.2d 257 (citation omitted).  The trial court found that Martin was not participating in treatment at Sandridge.  By statute, a trial court must find that five

---

[6] We note that Dr. Thornton characterizes Martin's behavior changes as "potentially more stable" because Martin did not participate in treatment, Dr. Thornton relies upon omissions to show improved behavior, and he speculates that the changes in Martin's behavior will continue even in an entirely different environment.  Dr. Thornton's testimony does not raise concerns that the State's evidence was of such insufficient probative value that we would question sustaining the trial court order.

criteria are satisfied prior to authorizing supervised release.[7] The first criterion is that the person "is making significant progress in treatment and the person's progress can be sustained while on supervised release." Sec. 980.08(4)(cg)1. Because Martin was not participating in treatment, the trial court could not find that the first criteria was satisfied. Therefore, although we acknowledge that the trial court should have addressed this issue, its failure to address it was harmless. *See* ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶28, 246 Wis. 2d 1, 19, 629 N.W.2d 768 ("If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless.").

---

[7] The court may not authorize supervised release unless, based on all of the reports, trial records, and evidence presented, the court finds that all of the following criteria are met:

1. The person is making significant progress in treatment and the person's progress can be sustained while on supervised release.

2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

3. Treatment that meets the person's needs and a qualified provider of the treatment are reasonably available.

4. The person can be reasonably expected to comply with his or her treatment requirements and with all of his or her conditions or rules of supervised release that are imposed by the court or by the department [of health services].

5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs that are required for the safe management of the person while on supervised release.

WIS. STAT. § 980.08(4)(cg).

15

## CONCLUSION

¶30    We conclude that sufficient evidence exists in the record to support the trial court order denying Martin's discharge petition in accordance with WIS. STAT. §§ 980.01(7), 980.09. First, the State showed that Martin was convicted of a sexually violent offense. Second, the State showed that Martin suffered from a mental disorder that predisposed Martin to commit acts of sexual violence. Third, the State showed through expert testimony that Martin was more likely than not to commit another sexually violent offense if discharged. We reject Martin's arguments to the contrary and affirm the trial court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.